E. T. Guthrie, Receiver of the First State Bank of Mattoon, Appellant, v. State Trust & Savings Bank of Mattoon et al., Appellees.

Gen. No. 8,355.

Opinion filed April 22, 1930. Rehearing denied May 31, 1930.

RAYMOND G. REAL and A. C. & BEN F. ANDERSON, for appellant.

BRYAN H. TIVNEN, for appellees; THOMAS R. FIGENBAUM and CARUS S. ICENOGLE, of counsel. JAMES VAUSE, JR., CARL D. KIGER, CLARENCE W. HUGHES and C. H. DOUGLAS, for certain appellees; J. I. DILSAVER, of counsel.

Mr. Presiding Justice Eldredge delivered the opinion of the court.

E. T. Guthrie, receiver of the First State Bank of Mattoon, Illinois, appellant, filed his bill in the circuit court of Coles county against the State Trust & Savings Bank of Mattoon and the officers and stockholders thereof to require an assessment on the stockholders of the defendant bank for the purpose of paying an indebtedness alleged to be due the complainant as such receiver, and upon a hearing the circuit court dismissed the bill for want of equity.

The bill of complaint is founded upon the following contract:

"This agreement, made and entered into this 21st day of January, 1924, by and between the First State Bank of Mattoon, an Illinois corporation, of Mattoon, Illinois, party of the first part, and the State Trust and Savings Bank of Mattoon, Illinois, an Illinois corporation, party of the second part, Witnesseth That:

"1. Whereas, second party is in financial difficulty, and is desirous of liquidating its assets and paying its creditors in full, and,

"2. Whereas, first party is desirous of starting a new bank in the building formerly owned and occupied by second party and of taking over the assets and business of second party, and assuming the liabilities thereof. Therefore,

"3. It is mutually agreed by and between the parties hereto, in consideration of the mutual promises and agreements herein made, and of the covenants to be performed on the part of each party hereto as hereafter set forth:

"4. That second party agrees to and does hereby sell, assign, set over and convey to party of the first part, all of its assets including personal, real, chattel, and mixed property, cash, bonds, credits, bills receivable, choses in action, books, papers, etc., of every kind

and character whatsoever and wherever situate, to have and to hold as the absolute property of first party forever, for the uses and purposes hereinafter set forth, except the following assets which are regarded as doubtful, to-wit:

(Here follows a complete list of all the assets of the State Trust & Savings Bank known as the 'non-accepted assets'.)

"5. That as to the foregoing list of assets, second party hereby assigns, transfers and conveys the same to first party for the purpose of collection, liquidation and application upon the liabilities of second party first party to have and to hold the same as its absolute property forever in trust, however, for the purpose of collection, liquidation and application upon the liabilities of second party and for that purpose, second party hereby authorizes first party, together with committee of second party consisting of Fred A. Kinzel, W. N. McKamy, W. H. Simmons and W. G. Sawin, to proceed to collect, renew, release, sue for, in the name, place and stead of second party for any and all of said assets.

"6. By the terms of this contract, the first party has unconditionally taken over all assets of the second party, except those listed in Paragraph 4, and hereby agrees, as far as said assets taken over unconditionally, to look absolutely to said assets, and hereby releases the party of the second part, its stockholders, directors and officers from any and all liability as to said assets unconditionally taken over. The liabilities assumed by the party of the first part amount to $930,189.99, as shown by Exhibit No. One attached hereto. The assets accepted unconditionally amount to $728,614.92 as shown by Exhibit Two attached hereto. The difference is $201,575.07. The party of the second part is to cause W. N. McKamy, H. W. Clark, W. D. Jones, Fred A. Kinzel, F. T. Moloney, S. W.

Phillips, James M. Reed, W. G. Sawin, H. F. Pressler, W. H. Simmons and Robert T. Holmes to execute a bond which is to run for the term of two (2) years, absolutely guaranteeing and protecting the party of the first part against loss as to this said sum of $201,-575.07. The Fifty Thousand Dollars ($50,000.00) paid to the party of the second part by the party of the first part in the manner hereinafter designated for the building of the party of the second part, is first to be applied in reduction of the indebtedness secured by this bond. Second, all sums realized from the collection of said doubtful assets listed in said Paragraph 4 are to be applied in reducing said indebtedness secured by said bond. Third, if said sum of Fifty Thousand Dollars ($50,000.00), and the amount collected on said doubtful assets within two (2) years from date are not sufficient to entirely make up said sum of $201,-575.07, then the party of the second part is to collect the statutory assessment against its stockholders to make up this deficiency. Fourth, if the moneys derived from the first, second and third clauses of this paragraph are not sufficient to pay off said sum of $201,575.07, then the said persons signing said bond are to make up said deficiency.

"7. Second party further agrees to sell and does hereby sell, transfer and agree to convey by good and sufficient warranty deed with abstract showing merchantable title, its building at the corner of Seventeenth Street and Broadway, Mattoon, Illinois, where it has for some time conducted its banking business for the sum of Fifty Thousand Dollars ($50,000.00), the same to be paid in three (3) equal installments, one-third within six (6) months from this date, one-third within twelve (12) months from this date, one-third within eighteen (18) months from this date, said deferred payments to bear interest at the rate of four (4) per cent per annum from this date, same payable

semi-annually; second party, however, to make and deliver the deed to said property to first party upon the signing of this contract; said three (3) payments aforesaid to be made by placing the respective sums to the credit of second party in the bank of the first party, to be applied on liabilities of second party as herein above set forth. It is further understood that the foregoing sum of Fifty Thousand Dollars ($50,-000.00) not only is consideration for the purchase of the said bank building and the property upon which it stands, but likewise includes all the furniture, fixtures and equipment located in said bank building.

"8. Second party further agrees to and does hereby name and appoint first party, in cooperation with said committee of second party named in Paragraph Five, as its duly authorized agent and attorney-in-fact, to endorse, assign, sell, convey, collect, renew, sue for, compromise, compound and do any and all things that in the judgment of the first party and said committee of second party may be deemed necessary or expedient in order to collect and realize on all the assets listed in Paragraph 4 turned over to them by these presents and in liquidating and paying the liabilities of second party, hereby authorizing first party, in cooperation with said committee, in its name, place and stead to do any and all things that in the judgment of said first party and said committee may be deemed best for the best interests of second party.

"9. Second party further agrees to pay any and all taxes, charges, assessments, either special, general, State, Federal, corporation or income, or any other charges of any kind or character whatsoever, now due on all or any of the assets hereby turned over to first party. All deferred installments of special assessments payable after this date and especially the Broadway Avenue Pavement shall be paid by first party.

"10. Second party further agrees to pay all expenses necessarily incurred by first party in making the transfer of the property and assets herein conveyed of every kind and character whatsoever, and especially abstract fees, recording fees, protest fees and insurance pro rata, which may have been incurred in and about the financial difficulties or examination of the assets of second party by the State, and in the transfer of the same.

"11. It is also mutually agreed by and between the parties hereto that any and all accrued interest upon any of the assets hereby unconditionally accepted and delivered to first party up to this date, when collected, shall belong to and be credited to the account of the first party, and that from and including this date, hereafter, the interest upon all of said assets, except those listed in Paragraph 4 hereof, shall belong to and be retained by first party; and, as to the assets listed in Paragraph 4, the accrued and accruing interest upon the same shall be the property of second party.

"12. Second party further agrees that its officers and directors shall, when requested by first party, assist first party in any way they possibly can to collect the assets of second party, and to apply the same upon the liabilities of second party, free of expense to first party, including their attendance in court as witnesses, if need be, and that they will sign and execute any and all releases, papers, deeds or mortgages, assignments or other documents that may be necessary in the judgment of first party and said committee of second party, to assist first party in collecting the assets of second party and distributing the same among its creditors; and that the Board of Directors of second party has heretofore appointed the committee heretofore referred to, consisting of Fred A. Kinzel, W. N. McKamy, and W. H. Simmons and W. G. Sawin, who are hereby specially authorized to ren-

der any assistance that may be requested by first party, without charge therefor.

"13. First party further agrees that first party shall pay the depositors of party of second part in full according to law. Party of the first part agrees also to pay all other liabilities of the party of the second part, except those listed in Paragraph 10 of this contract, and any liability due to the First State Bank of Greenup, Illinois; the Neoga National Bank of Neoga, Illinois; or any liability arising out of the disposition of the sum of $2,446.90 of the funds of one S. W. Ramert credited to the account of the Neoga National Bank by second party.

"14. Second party further agrees that first party shall not be liable to any person or persons or assume any liability to any person, persons or corporations, for any assets, bonds, notes, mortgages or any other thing of value left for safe-keeping with second party while it was engaged in the banking business, that has not been turned over and delivered to first party by second party at this time.

"15. Second party does, by these presents, hereby set over, assign and transfer to first party, the lease which it now holds upon the Thode Building next to and adjoining the building now owned by second party on the west and south, and first party assumes and agrees to perform the covenants and conditions thereof in manner and form as therein set forth with the exceptions that the party of first part shall not be liable for the construction of any building upon said Thode property, but which shall give the right to first party to use said Thode Building and the right of repair and alteration of the inside thereof as it may see fit, during the unexpired term of said lease.

"16. Parties agree that at expiration date of bond herein provided for, should parties to this contract deem it necessary or circumstances then existing rea-

sonably warrant it, a new bond may be given in lieu of present bond for a further period of two years.

"17. Parties further agree that if, after all liabilities secured by bond, and all liabilities existing by Paragraph 10 of this contract, are paid, any surplus on hand derived from doubtful assets or otherwise, shall be ratably repaid to the bondsmen of second party according to the amount they paid to first party upon said bond, until they are fully repaid. Any surplus then remaining shall be distributed to the stockholders of second party in accordance with the number of shares of stock owned by each.

"18. Second party further agrees that if first party should be compelled, or in its judgment, together with said committee of second party, deem it expedient to advance any funds to pay any of the liabilities of second party, including the expenses herein provided for, that first party shall be fully repaid out of the assets of second party hereby taken over when realized upon, or by the bondsmen of second party, with five and one-half per cent interest thereon from the date of said advancement.

"19. First party further agrees to and does hereby take over all the assets of second party of every kind, character and description, real, personal and mixed, except those listed herein, wherever situate, and hereby agrees to take the same in the manner provided by Paragraph 6 hereof at their face value, and accrued interest, and to give second party credit for the same at once, and to apply the same on the liabilities of second party, and as to the assets listed in Paragraph 4 herein, first party agrees that as the same are collected from time to time, to credit the account of second party to be kept by first party in its bank with second party, and to apply all of said assets as collected from time to time upon the liabilities of second party as in such manner as it may, in the judgment of

its officers and agents and said committee of second party, determine.

"20. First party hereby agrees that the services of said first party and its officers and employees in carrying out the provisions of this contract, shall be rendered without charge to second party.

"In witness whereof, the parties to this contract have this, the 21st day of January, 1924, executed said contract in duplicate, each party signing by its duly authorized officers."

To the contract are attached two exhibits showing the liabilities and the assets of the State Trust & Savings Bank respectively. Among the assets are listed the bank building, furniture and fixtures therein at the sum of $50,000.

In the bill the bond provided for in the contract is set out. The condition of the bond is as follows:

"The condition of this obligation is such, that whereas, the State Trust and Savings Bank of Mattoon, Illinois, has this day entered into a contract and undertaking with the said First State Bank of Mattoon, Illinois, wherein and whereby the said First State Bank of Mattoon, Illinois, has taken certain specified assets and has assumed all the liabilities of the State Trust and Savings Bank aforesaid; and

"Whereas, there is a difference of Two Hundred Thousand Dollars ($200,000.00) between the accepted assets and the liabilities of the said State Trust and Savings Bank; and

"Whereas, by Paragraph Six (6) of said contract it was provided that the Fifty Thousand Dollars ($50,-000.00) paid to the party of the second part by the party of the first part for the building of the party of the second part was to be first applied in the reduction of said liabilities, that all sums realized within two (2) years from this date, from the collection of said doubtful assets listed in said Paragraph Four (4)

were secondly to be applied in reducing said liabilities so secured by said bond, and that next, any sums realized by the party of the second part within two (2) years from this date, from the statutory liability of the stockholders should be used to pay any further deficiency in said sum of Two Hundred Thousand Dollars ($200,000.00), and that if the money derived from the sale of said building, the collection of said doubtful assets and the stockholders' liability are not sufficient to pay off said sum of Two Hundred Thousand Dollars ($200,000.00) that then the persons signing this bond were to make up said deficiency.

"Now, if the said difference of Two Hundred Thousand Dollars ($200,000.00) between said assets accepted and said liabilities assumed shall be paid in the manner provided for by said contract, a copy of which is hereto attached and made a part hereof, and the said First State Bank shall be held free from all loss and damage on account of said deficiency in said sum of Two Hundred Thousand Dollars ($200,000.00), then and in that case this obligation shall be void; otherwise to remain in full force and effect.

| | |
|---|---|
| W. N. McKamy | (Seal) |
| H. W. Clark | (Seal) |
| William D. Jones | (Seal) |
| Fred A. Kinzel | (Seal) |
| Frank T. Moloney | (Seal) |
| Samuel W. Phillips | (Seal) |
| James M. Reed | (Seal) |
| W. G. Sawin | (Seal) |
| H. F. Pressler | (Seal) |
| Wm. H. Simmons | (Seal) |
| Robert T. Holmes | (Seal)" |

In the bill it is averred that upon the execution of the contract and bond the First State Bank took possession of all the accepted assets of the State Trust & Savings Bank and paid all the liabilities of the latter

as contemplated by the contract and the liabilities so assumed and paid aggregated the sum of $930,189.99; that out of the nonaccepted assets the sum of $147,230.59 was collected and applied upon the liabilities of the State Trust & Savings Bank and reduced the amount, "so owing from the State Trust & Savings Bank of Mattoon to the First State Bank of Mattoon from the original sum of Two Hundred One Thousand Five Hundred Seventy-five Dollars and Seven Cents ($201,575.07) to the sum of, to-wit: Fifty-four Thousand Three Hundred Forty-four Dollars and Forty-eight Cents ($54,344.48.)" It is further averred that all the rejected or nonaccepted assets of the State Trust & Savings Bank which have any value have been collected; that there has been also collected from the stockholders of the State Trust & Savings Bank the further sum of $22,000, all of which sums so collected were applied upon the balance of said indebtedness due from the State Trust & Savings Bank to the First State Bank leaving the sum of $32,000 still due from the State Trust & Savings Bank to the First State Bank; that pursuant to the terms of the contract the First State Bank paid the debts of the State Trust & Savings Bank, and in so doing were not mere volunteers, but were entitled to all of the equitable rights of said creditors, in enforcing the constitutional and statutory rights of said creditors against the stockholders of the State Trust & Savings Bank; that the State Trust & Savings Bank notified all the stockholders of said bank that it would be necessary to levy an assessment of 50 per cent of the par value of the stock owned by each of said stockholders to pay the balance due the First State Bank and that in pursuance of said notice a large number of said stockholders paid to the First State Bank an amount equivalent to 50 per cent of the par value of the stock owned by each of said stockholders and upon the pay-

ment of said sum by each of said stockholders the First State Bank issued to each, excepting, however, the stockholders of said bank who had signed the bond heretofore referred to, a release releasing said stockholders from any further liability to the First State Bank; that demand has been made for payment of the stockholders' assessment upon all the stockholders of the State Trust & Savings Bank who have not paid any portion of the assessment and that many of said stockholders have failed and refused to pay the same to the First State Bank, ''as a creditor of the State Trust & Savings Bank'' any sum in discharge of their constitutional liability as such stockholders; that complainant has performed all the conditions of said contract and said bond; that after allowing all just credits, collections and set-offs paid to it and collected by it there is due it, ''as a creditor,'' including interest, the sum of, to-wit: $40,000; that the court may order an accounting for the purpose of ascertaining the balance due the complainant, ''as a creditor,'' of the State Trust & Savings Bank and that a decree may be entered against each and all of the stockholders of the latter bank except those who have paid an amount equivalent to 50 per cent of the par value of the stock owned by them, for the balance found due upon said accounting, etc.

To this bill the defendants filed answers and cross-bills. The answers substantially set up three defenses to the bill, and the first is to the effect that the stockholders of the State Trust & Savings Bank never legally authorized the directors and officers of that bank to execute the contract in question. This contention we understand from the briefs and arguments of counsel has been practically abandoned. The second defense is to the effect that the contract is one of actual sale of the assets of the State Trust & Savings Bank to the First State Bank and the assumption of

the latter of the debts of the former. The third defense is that under the terms of the contract if the same be construed not to be one of an actual sale yet the First State Bank has been fully paid and no amount remains due and owing to it from the State Trust & Savings Bank. Appellees, to sustain their contention that the contract is one of an absolute sale of the assets of the State Trust & Savings Bank to the First State Bank and of the assumption of the latter of the liabilities of the former and that there was no express undertaking by the former to pay any deficiency in the assets of the latter to pay the liabilities, rely upon the case of *American Nat. Bank v. Holsen,* 331 Ill. 622. In the case at bar as in the *Holsen* case there is no express provision that the State Trust & Savings Bank should pay any deficiency which might exist between the assets and the liabilities of the bank unless it can be implied from the sixth paragraph of the contract which provides that if the sum of $50,-000 and the amount collected on the doubtful assets within two years from date are not sufficient to entirely make up the sum of $201,575.07, then the State Trust & Savings Bank is to collect the statutory assessment against its stockholders to make up this deficiency. Paragraphs one and two of the contract express the intentions of the parties thereto, to wit: that the State Trust & Savings Bank is in financial difficulty and is desirous of liquidating its assets and paying its creditors in full and the First State Bank is desirous of starting a new bank in the building formerly owned and occupied by the State Trust & Savings Bank and of taking over the assets and business of the latter bank and assuming the liabilities thereof. In paragraph six it is provided: "The liabilities assumed by the party of the first part (First State Bank) amount to $930,189.99, as shown by Exhibit No. One attached hereto." While the contract in the *Holsen*

case is similar in many respects with the contract in this case yet there are several material differences. In the former case the contract contained a provision that the liquidator bank, "agrees to assume and does assume all of the liabilities of the State Bank, except its liabilities to its shareholders." No such provision appears in the contract in this case. All the assets of the State Trust & Savings Bank were not taken over by the First State Bank, but certain assets which were regarded as doubtful, and called by the parties "non-accepted assets," were specifically excluded but were assigned to the First State Bank in trust for the purpose of collection, liquidation and application upon the liabilities of the State Trust & Savings Bank. It also appeared in the *Holsen* case that both banks involved therein considered the liquidating bank to be entirely solvent and that fact was taken into consideration by the court in construing the contract in that case. At a meeting of the stockholders of the State Trust & Savings Bank held on the 14th day of January, 1924, a resolution was passed authorizing the board of directors of said bank to enter into an agreement with the First State Bank "for the transferring and assigning to said bank of all the assets of the State Trust & Savings Bank including therein all its deposits of every nature, its building, lease, fixtures, etc., for the sum of $50,000, and, as a further consideration for said transfer and assignment, the First State Bank of Mattoon shall also assume and pay all the liabilities of the State Trust & Savings Bank, not, however, releasing the liability of the stockholders of the State Trust & Savings Bank, and that any and all assets which shall not be accepted by the First State Bank shall be held by said bank or some person designated by the directors of the State Trust & Savings Bank together with said $50,000 as security for the payment of all liabilities of the State Trust & Sav-

ings Bank and after the payment of all liabilities any remaining assets of said bank shall be distributed *pro rata* to its stockholders; it being understood that the First State Bank *shall only accept such assets as it deems good,* and provided further, that the First State Bank shall assist in and act as agent for the State Trust & Savings Bank in the collection of the assets of the latter bank which may not be taken over by the First State Bank, said services to be rendered free of charge to the State Trust & Savings Bank.'' The resolution further provided that the board of directors be empowered to enter into any contract for the purpose of carrying out in substance the aforementioned things and to do any and all other things as they may deem necessary in the interest of the stockholders for transferring and assigning the assets of the bank to the First State Bank. At a meeting of the directors of the First State Bank held January 21, 1924, a resolution was passed which provided that whereas the First State Bank is desirous of taking aver *certain of the assets* and assuming the liabilities of the State Trust & Savings Bank and whereas a committee appointed by the board has examined all the assets and liabilities of the State Trust & Savings Bank and in conjunction with a committee of the board of the latter bank has agreed upon a plan whereby said bank can take over *certain of the assets* and assume the liabilities of the State Trust & Savings Bank, *excepting liabilities of stockholders,* and has prepared a contract and bond which has been executed by both banks and submitted to said bank for its approval; that said contract and bond are approved and E. T. Guthrie, president and J. P. Crane as secretary of the First State Bank are authorized to execute said contract in behalf of said bank and take over the assets and assume the liabilities of the State Trust and Savings Bank, etc. The words, ''excepting liabilities of stockholders'' used in both

resolutions refer to the liabilities of the stockholders of the State Trust & Savings Bank to its creditors arising by virtue of section 6 of article 11 of the Constitution which provides that every stockholder in a banking corporation shall be individually responsible to its creditors over and above the amount of stock by him or her held to an amount equal to his or her respective share so held for all liabilities accruing while he or she remains such stockholder. There was no such liability at common law and the appellant cannot obtain the relief prayed 'unless the contract imposes upon him the relation of creditor in so far as there may be a deficiency shown in the collection of the nonaccepted assets. It is argued by counsel for appellant, although not claimed in the bill itself, that the First State Bank is subrogated to all the rights of the creditors of the State Trust & Savings Bank. Legal subrogation is confined to the relation of principal and surety and to cases where a person is compelled to remove a title superior to that held by him in order to protect his own, and to cases of insurers. Conventional subrogation results from an express agreement with the debtor by which one advances money to pay a claim for the security of which there exists a lien, by which agreement he is to have an equal lien with that paid off. *American Nat. Bank v. Holsen, supra.* There can therefore be no application of the doctrine of subrogation in this case as the contract contains no such agreement. The First State Bank in order to sustain the bill must be a creditor and that relation must be established by the contract in question. Considering all the provisions of this contract and the construction placed thereon by the parties themselves, we are of the opinion that such a relationship did exist in so far as the nonaccepted assets are involved, and that appellant would have a right to the

relief prayed for in the bill if the proofs showed that such a deficiency did in fact exist.

The proofs, however, conclusively show that no such deficiency did exist under the terms of the contract. The master in chancery and the chancellor each so found and their findings are clearly supported by the evidence. Paragraph 6 of the contract provides that the $50,000, the price agreed upon to be paid by the First State Bank for the bank building and fixtures therein, shall be first applied in reduction of the indebtedness secured by the bond; that there shall then be applied upon such indebtedness the amount collected from the doubtful assets listed in paragraph 4; that if there then shall still be a deficiency the State Trust & Savings Bank shall make the statutory assessment against its stockholders to make up this deficiency. It is urged by counsel for appellant that by the terms of this contract the State Trust & Savings Bank shall give credit for the $50,000 twice because this amount was listed among the accepted assets and goes to make up the total of $728,614.92 which was unconditionally accepted and that therefore this $50,000 should be excluded in determining the amount of the deficiency if any. This contention cannot be sustained. The contract must speak for itself. It was not hastily drawn but was executed after a series of discussions and consultations in regard to the terms of the contract by the parties and their counsel. More than one draft of the contract were drawn and rejected before the final contract was executed. Each bank had the assistance of able counsel. The assets and liabilities of the State Trust & Savings Bank were fully examined and both parties were conversant with the actual conditions thereof. The bill does not pray for any reformation of the contract nor is it suggested therein that any error was committed in its preparation or any mistake of fact embodied in its terms. In the *Holsen*

case, *supra,* the court held in regard to the contract there in question: "The parties have thus reduced their agreement to writing, the written agreement is presumed to contain all the terms of the contract and no promise can be implied contrary to the written terms." It is not possible from the wording of section 6 that the provisions therein expressed could be other than what was intended by both parties. The indemnifying bond is conditioned in exactly the same words. The court cannot read into this contract provisions not contained therein nor amend it so as to make its terms more favorable to appellant than the plain language therein indicates. The terms in this paragraph are very plainly expressed and are reiterated in the indemnifying bond. The proof conclusively shows that out of the nonaccepted assets there was collected the sum of $247,149.05. The stipulated amount of liabilities in the contract was $930,189.99. The stipulated amount of the assets conditionally accepted was $728,-614.92. The amount of the indebtedness remaining to be paid from the nonaccepted assets is stipulated at the sum of $201,575.07. It will thus be seen that there was actually collected out of the nonaccepted assets $45,-573.98 in excess of the stipulated deficiency. In order to overcome this amount counsel for appellant, ignoring the stipulated amount of liabilities, increased the same to $959,439.04 by adding thereto numerous other items concerning which no proof as to their correctness was made to the amount of $7,006.04 and then adding thereto $22,243.36 as interest on balances at 5 per cent. Counsel for appellant in regard to this item of interest admits that the contract does not provide for the payment of the same but contends that it is allowable under the law. The parties are bound by the terms of their contract and no such interest is allowable under this contract. Appellant then seeks to readjust the stipulated amount of the assets ac-

cepted unconditionally by deducting therefrom $6,-565.80 leaving a balance of accepted assets of $722,-049.12. These deductions are made for notes claimed not to have been received and for the auditor's fee of $1,000 taken from the cash. Appellant then deducts the sum of $23,817.09, the amount collected from the stockholders by special assessment from the amount collected from the nonaccepted assets. Appellant received this amount of money and should account for it. He then also deducts from the amount of uncollected assets $12,395.68 which he claims was interest on the rejected assets. These deductions reduce the amount of the nonaccepted assets to $210,936.28. From the latter amount he also claims a deduction of $19,-177.90 for increased loans and discounts. There is nothing in the contract which would authorize such a deduction. Among other deductions is one for $16,-870.29 charged to expenses for collecting the nonaccepted assets. The expenses for which appellant had a right to take credit for are specifically set out in paragraphs 9 and 10. Paragraph 20 of the contract provides that the First State Bank agrees that the services of it and its officers and employees in carrying out the provisions of the contract shall be rendered without charge to the State Trust & Savings Bank. Appellant seeks to charge appellees among other things attorney's fees amounting to nearly $4,500 and clerical hire amounting to $3,000 and numerous other expenses unnecessary to mention, the whole totaling $16,870.29. It is unnecessary to go more into detail of the accounting and it would be impossible in the limits of an opinion to discuss all the items in controversy. Many of the items consisted simply of written statements and ledger sheets without any proof in regard to the items themselves. As to the nonaccepted assets the First State Bank was a trustee and the burden was on it to make affirmative proof in seeking credit for

disbursements made from the trust funds and to show by affirmative proof that such disbursements were proper. *Wylie v. Bushnell,* 277 Ill. 484; *Lehman v. Rothbarth,* 159 Ill. 270. We have examined the account as stated to the best of our ability and are firmly convinced that no deficiency exists for which the stockholders can be made liable.

For the reasons stated the decree of the circuit court is affirmed.

*Affirmed.*