(No. 18527.—

THE AMERICAN NATIONAL BANK OF MT. CARMEL, *et al.*
Plaintiffs in Error, *vs.* FRED H. HOLSEN, JR., *et al.* Defendants in Error.

*Opinion filed October 25, 1928.*

GEE & GEE, and GEORGE W. LACKEY, for plaintiffs in error.

P. J. KOLB, and M. J. WHITE, for defendants in error Fred H. Holsen, Jr., *et al.;* BEN H. TOWNSEND, for defendant in error C. F. Brian; W. S. WILLHITE, for other defendants in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

The circuit court of Wabash county entered a decree on a bill filed by the American National Bank of Mt. Carmel and the National Service Bureau to enforce the liability of the stockholders of the First State Bank of Mt. Carmel for the benefit of the creditors of that bank, requiring the defendants to pay to a receiver appointed by the decree the amounts found due by them by reason of their ownership of stock in the First State Bank. Fred H. Holsen, Jr., F. J. Dorney, Logan Litherland, James A. Holsen and Louella Manley, five of the defendants, appealed to the Appellate Court for the Fourth District, which reversed the decree. By writ of *certiorari* allowed to the American National Bank the record has been brought before us for review.

The First State Bank of Mt. Carmel, a corporation organized under the laws of Illinois, having a capital stock of

$100,000, at a meeting of its stockholders held on November 7, 1923, resolved to go into liquidation and to accept a proposal by the American National Bank of Mt. Carmel. Pursuant to the authority conferred by this resolution, the State Bank, by its board of directors, on November 10, 1923, entered into a written contract with the National Bank to transfer and deliver to the National Bank all of its assets which, under the national banking laws and regulations of the comptroller of the currency, the National Bank would be allowed to carry as items of resource, being all of the assets of the State Bank except its real estate, furniture and fixtures, and such of its notes, bonds and other securities as the National Bank might consider worthless or not sufficiently secured, together with all collateral pledged to the State Bank to secure the payment of any note or other item of indebtedness to it which might be transferred to the National Bank, and also to transfer all the remainder of its assets not transferred to the National Bank to a committee composed of the president of the National Bank, the cashier of the State Bank and a director of the State Bank, who were all named, such assets so to be transferred to the committee to be collected and sold and the receipts derived from the collection and sale thereof to be applied by the committee to discharge the liabilities of the State Bank so far as necessary, and, when all such liabilities had been so discharged, then the remainder of the funds left on hand to be paid over by the committee to the State Bank for its shareholders. It was agreed that all such assets as were transferred to the committee should be held by it as trustee for the two banks according to their mutual rights under the contract. The National Bank, in consideration of the transfer and delivery to it of such assets of the State Bank as were transferred to it and of the transfer of such other assets to the committee, and of an agreement, which is hereafter mentioned, for the indemnification of the National Bank, agreed to, and did, assume all

of the liabilities of the State Bank except its liabilities to its shareholders, and agreed to assist in the matter of liquidating the affairs of the State Bank without receiving any compensation therefor, except that it should be permitted to charge the State Bank for any and all expenses actually and necessarily paid out in connection with its work in liquidating such business. It was agreed that all assets that were transferred to the National Bank should be received by it and credit given the State Bank therefor at the full face value thereof; also that all of the negotiable paper so transferred should be endorsed in blank by the State Bank and assignments properly made of all securities not negotiable to which the title would not pass by delivery, and the full payment of all such assets was guaranteed by the State Bank. It was also agreed that an equitable adjustment should be made of the matters of interest that had been collected in advance on items transferred to the National Bank and interest that it should have to pay on the outstanding certificates of deposit of the State Bank which the National Bank was obligated to pay under the agreement, and that such adjustments should be made by proper debits and credits, as the equity of the case required, on the account of the State Bank with the National Bank. It was further agreed that with the transfer of assets to the National Bank there should also be delivered to it all books of account, files, records, canceled drafts, certificates of deposit, cashier's checks, customers' checks, and all correspondence relating to the business of the State Bank as the same had been conducted theretofore.

The contract for the indemnification of the National Bank, which was mentioned in the contract and which the State Bank agreed to furnish, was an indemnifying bond to be signed by all or enough of its stockholders to satisfy the National Bank, indemnifying the National Bank against any and all pecuniary loss that might be sustained by it on account of its assumption of the liabilities of the State

Bank and assisting with its liquidation under the agreement. It was further agreed that the contract was not to become operative, either as a whole or in part, until the president of the National Bank, together with such of the other officers and directors of such bank as he might appoint to assist him, should have examined the State Bank's affairs in detail and the bond or contract of indemnification had been signed and delivered to and accepted by the National Bank. In pursuance of this agreement forty-five stockholders of the State Bank executed an instrument which, after reciting the agreement between the two banks, bound the makers jointly and severally to the National Bank to save and keep the National Bank harmless and free from any and all pecuniary loss or damage in any or either of the following eventualities, to-wit: In the event the National Bank should suffer any loss by reason of being unable to collect or realize, either in whole or in part, on any of the notes, bonds, securities or other evidences of indebtedness delivered over to it by the State Bank in accordance with the provisions of the contract; or because of any errors or discrepancies that might be found to have been made or existed in the amount of the liabilities of the State Bank as the same were found and believed to be at the time of making the transfer of assets and assumption of liabilities under the contract; or in the event the total amount realized from the reduction of all of the assets of the State Bank to cash by collection and sale and the application of such cash to the discharge of the liabilities of the State Bank as provided by the terms and conditions of the contract between the two banks, including all that had been transferred to the National Bank and all that had been transferred to the liquidating committee, when fully collected and reduced to cash, and after payment of all necessary expenses incurred by the liquidation of the affairs of the State Bank, should be found to be less than the total amount of the liabilities assumed by the National Bank under the provisions

of the contract with the State Bank; or in case of any other eventuality that had not been mentioned but that might be the result of the assumption by the National Bank of the liabilities of the State Bank and the contract entered into for the carrying out thereof by the National Bank; and should any or all of such eventualities happen, the makers, jointly and severally, agreed and bound themselves to pay the National Bank the full amount of such losses, expenses or deficiencies as soon as the same should be found to exist. The instrument further stated that it was understood and agreed by the makers, and each of them, that nothing contained in it, or in the contract between the banks, or in the resolution, or anything that happened in connection with the transfer of assets to the National Bank and the assumption by it of certain of the liabilities of the State Bank, should be understood, construed or held as in any manner limiting or lessening the liability of any or either of the makers, jointly and severally, either as shareholders of the State Bank or otherwise; and the makers further agreed that the National Bank should be subrogated to the rights of the creditors of the State Bank to proceed against the makers, as shareholders in the State Bank, to enforce payment of any and all of the liabilities of the State Bank so assumed by the National Bank.

The liability sought to be enforced in this case is that imposed by section 6 of article 11 of the constitution, which provides that "every stockholder in a banking corporation or institution shall be individually responsible and liable to its creditors, over and above the amount of stock by him or her held, to an amount equal to his or her respective shares so held, for all its liabilities accruing while he or she remains such stockholder." This section imposes a several and distinct liability on each stockholder (*Golden* v. *Cervenka,* 278 Ill. 409,) and is self-executing. (*Dupee* v. *Swigert,* 127 Ill. 494; *People* v. *Adams State Bank,* 272 id. 277.) The two facts essential to sustain the decree are,

that the plaintiffs in error were creditors of the State Bank and that the defendants in error were stockholders. While other questions are found in the record and are argued by counsel, the Appellate Court found that the evidence failed to establish the first of these facts, and as we have arrived at the same conclusion it will be unnecessary to discuss any other question.

The bill was filed originally by the American National Bank alone, but later the National Service Bureau filed a petition for leave to join with the American National Bank as a party complainant, and an amended bill was filed in which it joined as a complainant. The answer of the defendants in error did not admit that the complainants were creditors of the State Bank, and the abstract contains no evidence of any indebtedness of the State Bank to the National Service Bureau, and its claim may therefore be disregarded. The claim of the American National Bank arises out of the transactions between it and the State Bank in regard to the liquidation of the latter and is based on the written instruments which have been mentioned. The record contains no evidence of the terms of the proposal by the National Bank to take over the assets of the State Bank and assume the liabilities of the latter except the recital contained in the resolution of the State Bank passed on November 7, 1923, and the rights and obligations of the parties must be governed by the terms of the agreement dated November 10, 1923. That agreement provided for the transfer of all the assets of the State Bank and the assumption of all its liabilities, except its liabilities to its shareholders, by the National Bank.

The resolution of the directors of the State Bank expressly authorized the transfer of all its assets to the National Bank, and the committee as trustee for the two banks, for the purpose of giving effect to the proposal of the National Bank and to the end that the affairs of the State Bank might be "fully and speedily liquidated and the lia-

bilities of it and those of its shareholders fully discharged."
The agreement of November 10 was executed by the two
banks in pursuance of this authorization, and the indemni-
fying bond required by its terms was executed by certain
of the stockholders of the State Bank to the satisfaction of
the National Bank and was accepted by the National Bank.
From these instruments, considered in the light of the cir-
cumstances under which they were executed, the obligations
and rights of the parties must be determined.

Briefly stated, the obligations which the State Bank un-
dertook were to transfer all its assets which the National
Banking law and the regulations of the comptroller of the
currency would permit the National Bank to take and carry
among its resources, to the National Bank, and all the re-
mainder of the State Bank's assets to J. M. Mitchell, R. R.
Stansfield and E. Guy Mundy, as trustees of the two banks,
to collect and sell and to apply the proceeds to the discharge
of the liabilities of the State Bank so far as necessary and
after the discharge of all such liabilities to pay over the
remaining funds to the State Bank for its shareholders; to
indorse in blank all negotiable papers so transferred to the
National Bank, to make proper assignments of all securities
not negotiable, and to guarantee full payment of all such
assets; to deliver to the National Bank, with the transfer
of such assets, all books of accounts, files, records, canceled
drafts, certificates of deposit, cashier's checks, customers'
checks, and all correspondence relating to the business of
the State Bank theretofore conducted; and to furnish to
the National Bank an indemnifying bond, signed by all or
enough of the stockholders of the State Bank to satisfy
the National Bank, indemnifying the latter bank against
pecuniary loss by it on account of the assumption by it of
the liabilities of the State Bank and assisting in the liquida-
tion thereof. The obligations of the National Bank were
to pay all the liabilities of the State Bank except its liabili-
ties to its shareholders, and to assist in liquidating the af-

fairs of the State Bank without compensation except expenses actually paid.

There is here no express undertaking by the State Bank to pay to the National Bank any deficiency in the assets of the State Bank to pay its liabilities. No such deficiency was anticipated. Though it soon developed that the State Bank was insolvent, this was not known at the time, but the parties proceeded on the theory that the embarrassment of the State Bank and its inability to pay its depositors and meet its other liabilities as they fell due arose only out of a too great extension of credit and a lack of available cash resources but that its assets were actually sufficient to meet all its liabilities. The contract made no express provision for the re-payment by the State Bank of any amount which the National Bank might be compelled to pay in excess of the amount realized from the assets of the State Bank, but expressly reserved to the State Bank the surplus of the assets transferred to the committee remaining after the discharge of the liabilities of the State Bank. The parties having thus reduced their agreement to writing, the written agreement is presumed to contain all the terms of the contract and no promise can be implied contrary to the written terms. There is no doubt of the obligation imposed upon the National Bank by the use of the language, "agrees to assume and does assume all of the liabilities of the State Bank, except its liabilities to its shareholders." These words amount to an agreement to pay the liabilities mentioned, (*Springer* v. *DeWolf*, 194 Ill. 218; *Thomas* v. *Home Building Ass'n*, 243 id. 550;) and exclude any implied agreement by the party transferring the property to re-pay the party to whom it is transferred for the payments made under the agreement. The agreement is in conformity with the belief of the National Bank in the sufficiency of the assets of the State Bank to meet its liabilities, shown by the statement in its advertisement inserted in the Mount Carmel *Republican-Register* soliciting the pat-

ronage of the public for its service in taking over the State Bank, that "in our opinion the First State Bank was entirely solvent and could have met its obligations without an assessment on its stockholders if given the opportunity to do so in the regular way, but under the circumstances it seemed best to have the business transferred to a larger and stronger institution, and in this the American National Bank was the unanimous choice of its stockholders." The provisions of the contract that all the assets transferred to the National Bank "shall be received by it and credit given the State Bank therefor at the full face value thereof," that "such adjustment shall be made by proper debits and credits, as the equity of the case requires, on the account of the State Bank with the National Bank," and that the National Bank "shall be permitted to charge the State Bank for any and all expenses that it has actually and necessarily paid out," are relied upon by the plaintiff in error as requiring the interpretation "that the National Bank should become the creditor of the State Bank to the extent of the moneys advanced in paying the liabilities of the State Bank, that the assets of the State Bank should be used to pay its obligation to the National Bank, and that after all the assets of the State Bank should have been exhausted and a deficit still remaining (if such were the case) then the indemnifying guarantors should make up such deficit." After the payment by the National Bank of the obligations of the State Bank an accounting would be necessary to determine whether there was a deficit to be made up by the signers of the bond indemnifying the National Bank against loss or a surplus to be paid to the State Bank for its shareholders, and these provisions in the contract refer to such an accounting but did not purport to, and did not, impose any obligation on the State Bank not imposed by the other terms of the contract.

Many cases have arisen in which the question of the liability of stockholders of a bank going into voluntary liqui-

dation and transferring all its assets to another bank as its liquidating agent in consideration of the assumption by the latter bank of all the liabilities of the former has been considered. The rights of the parties in each case depend upon the terms of the contract under which the payments or advancements were made. If the transfer of the assets of the bank going into liquidation is an outright sale in consideration of the assumption of all its liabilities by the other bank no debt is created and no liability of stockholders exists, but if the transfer is for the purpose of giving security for the re-payment of money advanced the liability of the stockholder attaches. (*Hightower* v. *American Nat. Bank,* 263 U. S. 351.) In that case the court held that the transfer of the assets was intended as security for the re-payment of advances to pay liabilities, and not an outright sale. of the assets in consideration of an unqualified assumption of the liabilities. By the contract the American National Bank accepted the appointment of liquidating agent of the Commercial National Bank and agreed to proceed with diligence to collect and reduce to cash all the assets of the association, all of said assets to be held as security for all advances made by the American National Bank in paying the depositors and other liabilities of the Commercial National Bank in realizing on said assets, and after deducting from the proceeds of said assets the actual expenses incurred by the American National Bank in liquidating said association and acting as liquidating agent and in collecting said assets and realizing upon the same, to apply said proceeds, first, in re-paying to itself all amounts advanced by it, with interest at seven per cent per annum; next, in discharging the liabilities of the Commercial National Bank which should not have been paid by advances made by the American National Bank; and it was further agreed that when all of said liabilities had been fully discharged the American National Bank would account to the shareholders of the Commercial National Bank, and from

time to time pay over to said shareholders *pro rata* the surplus remaining in its hands from the proceeds of said assets, the American National Bank to act as such liquidating agent without compensation for its own services; it being distinctly agreed and understood that should the liquidation be interrupted or discontinued for any reason beyond the control of the American National Bank, that bank should hold all of the assets of the Commercial National Bank as security for the advances which might have been made by it up to the time such liquidation might be so discontinued, and it being further distinctly understood that neither the resolutions of the boards of directors of said associations, nor the contract, should relieve the shareholders of the Commercial National Bank from their legal liability as shareholders to respond in the event it might be necessary to have recourse upon such shareholders' liability for any deficit which might remain after exhausting the other assets of said association in the payment of its liabilities. There were other provisions in the contract which, taken alone, appeared to pass the title to the assets of the Commercial National Bank to the American National Bank absolutely and without reservation, but the court, upon consideration of all the provisions of the contract, held that the transfer was by way of security and was not a sale. While the language of this contract by its earlier provision indicated an unqualified sale of assets, the later provisions clearly showed that the transfer was only by way of security; that the bank remained responsible for any deficiency of assets and its stockholders remained subject to the statutory liability for this debt.

In *Assets Realization Co.* v. *Howard,* 211 N. Y. 430, the Metropolitan Bank of Buffalo, New York, having resolved to go into voluntary liquidation, pledged all its assets to the German Bank of the same city as security for the advancement of money sufficient to pay all the depositors of the Metropolitan Bank, for which it was to receive six

per cent interest per annum, and it was also to receive $20,000 as compensation for its services in the matter of the liquidation of the Metropolitan Bank. There was no express assumption by the German Bank of the liabilities of the Metropolitan Bank to its depositors, no express promise by the Metropolitan Bank to pay for the advances or services, and no reference to the liability of stockholders. The Court of Appeals held that no promise to re-pay the advances could be implied and that the contract imposed no personal obligation on the bank. It was said that "the liquidating bank was turning over to the liquidator all of its assets of every possible kind, and the latter was undertaking to pay off the former's depositors, concededly holding the assets as a fund for its re-payment. The transaction, as an entirety, bore closer kinship to a transfer by a debtor of his property in trust to pay his debts than it did to a loan of money with a personal promise of re-payment." Whether we regard the conclusion reached in that case as sound or not, in the present case, where there is an express assumption of liabilities and there is no reference to advancements or security or to re-payment except out of the assets transferred, the transaction has all the indicia of an outright sale rather than a loan of money with a promise of re-payment. The contract between the banks made no reference to the liability of the stockholders.

The agreement of the stockholders signing the instrument of indemnity of the National Bank that nothing contained in that instrument or the contract between the banks should be understood as limiting their liability as shareholders of the State Bank, and that the National Bank should be subrogated to the rights of creditors of the State Bank to proceed against the signers of that instrument as shareholders in the State Bank to enforce payment of all liabilities of the State Bank assumed by the National Bank, referred to the creditors of the State Bank whose claims were assumed by the National Bank. It did not have the effect

to create any liability of the State Bank to the National Bank which was not created by the contract between the two banks.

The bill alleges that the liabilities of the State Bank amounted to the sum of $240,495.75, which the National Bank paid and which was $126,466.44 more than the available assets of the State Bank; that there still remain in the hands of the liquidating committee about $30,000 worth of assets, consisting of notes, bonds, mortgages and real estate, being all that remains of any value to be applied on the liquidation of the liabilities of the State Bank, all the remaining assets being worthless; that the directors of the State Bank made an assessment to pay the deficiency of the assets to meet the liabilities of the State Bank, of one hundred cents on the dollar, and $48,770 has been collected on that assessment and credited on the liabilities, and that a deficit of $48,689.44, with interest, still remains to pay the amount which the National Bank has advanced upon the agreement between the two banks. The bill contains no allegations of any default in the payment of any of the assets of the State Bank guaranteed by that bank or that the National Bank has been unable to collect any part of the assets so guaranteed. The bill proceeds wholly on the theory that the National Bank by the contract between the two banks became the creditor of the State Bank for whatever sums the former advanced to pay the liabilities of the latter and that the State Bank is the debtor of the National Bank for any deficiency of the assets. This is contrary to the views which we have taken of the contract, and the failure to charge any breach of the bank's guaranty of the transferred assets makes it unnecessary to consider the effect of such breach, if any has occurred.

The bill prayed that the court decree that the National Bank be subrogated to all the rights of the creditors and depositors of the State Bank. The facts show no right of subrogation of the National Bank to the rights of the cred-

636

itors of the State Bank whose claims were assumed by the National Bank to enforce the liability of the stockholders of the State Bank on the claims of such creditors. Legal subrogation is generally confined to the relation of principal and surety, to cases where a person is compelled to remove a title superior to that held by him in order to protect his own, and to cases of insurers. Conventional subrogation results from an express agreement with the debtor by which one advances money to pay a claim for the security of which there exists a lien, by which agreement he is to have an equal lien with that paid off. (*Home Savings Bank* v. *Bierstadt,* 168 Ill. 618; *White* v. *Cannon,* 125 id. 412.) Neither of these principles applies in this case.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*