AMERICAN STATE BANK OF DETROIT *v.* AARON.

1. APPEAL AND ERROR—BANKS AND BANKING—STOCKHOLDERS' LIA-
   BILITY—STOCK IMPAIRMENT ASSESSMENT—SCOPE OF ACTION.
   Holding by trial court that suit brought by liquidating agent in
   behalf of bank being liquidated could be prosecuted to enforce
   stockholders' liability only and not also to collect stock im-
   pairment assessment which had been ordered by banking com-
   missioner is not reviewable where plaintiffs do not appeal
   (3 Comp. Laws 1929, §§ 11941, 11945).

2. PLEADING—ALLEGATIONS OF BILL TAKEN AS TRUE ON MOTION TO
   DISMISS.
   On motion to dismiss bill of complaint, the allegations therein
   are taken as true.

3. BANKS AND BANKING—CONTRACTS—LIQUIDATION—STOCKHOLDERS'
   LIABILITY.
   In suit to enforce stockholders' liability of bank which went into
   voluntary liquidation after making so-called bill of sale and
   agreement with another bank, constituting latter a liquidating
   agent, contention of defendants that as the agent had assumed
   all liabilities of the bank being liquidated and acquired all its
   assets the bank had no creditors and hence there was no justi-
   fication for bringing suit is not sustained, where contract in-
   cluded transfer of all stockholders' statutory liability (3 Comp.
   Laws 1929, § 11945, 11953).

4. CONTRACTS—CONSTRUCTION—ENFORCEMENT.
   A contract which is not illegal should be construed and enforced
   according to its express terms.

5. BANKS AND BANKING—AGREEMENT FOR LIQUIDATION—CONSTRUC-
   TION.
   Agreement between two banks whereby first assumed all liabili-
   ties and acquired all assets of second and agreed to return
   excess, if any, to latter after discharging its liabilities *held,*
   not to effect a sale, consolidation or merger but merely an
   undertaking by first bank to liquidate latter and enforce lat-
   ter's stockholders' statutory liability to amount necessary for
   reimbursement in case assets were insufficient (3 Comp. Laws
   1929, §§ 11945, 11953).

6. SAME—CREDITORS—STOCKHOLDERS' STATUTORY LIABILITY.

A bank's creditor is not expressly authorized by statute in this State to bring suit to enforce the stockholders' statutory liability (3 Comp. Laws 1929, § 11945).

7. SAME—STATUTES—ENFORCEMENT OF LIABILITY BY BANK.

Statute providing for enforcement of bank stockholders' double liability expressly authorizes suit for that purpose by bank in process of liquidation (3 Comp. Laws 1929, §§ 11945, 11953).

8. SAME—ENFORCEMENT BY LIQUIDATING AGENT.

Bank, acting as liquidating agent of another bank in voluntary liquidation *held*, entitled to enforce stockholders' statutory liability as per agreement therefor by suit in equity (3 Comp. Laws 1929, §§ 11945, 11953).

9. SAME—ASSIGNABILITY—CONTINGENT ASSET—INSOLVENCY.

Although a bank stockholder's statutory liability is not an assignable asset, nevertheless it is a contingent asset available to satisfy the bank's obligations upon disclosure of insolvency while it is being liquidated (3 Comp. Laws 1929, § 11945).

10. SAME—POWERS OF LIQUIDATING AGENT—BRINGING SUIT.

Bank which went into voluntary liquidation, selected another bank as agent and transferred to it all assets, including stockholders' contingent statutory liability and power to enforce same, thereby empowered agent to bring suit against stockholders in name of bank being liquidated notwithstanding latter's refusal to do so in disregard of its agreement (3 Comp. Laws 1929, § 11945).

11. SAME—INVOLUNTARY LIQUIDATION—JURISDICTION OF BANKING COMMISSIONER EXCLUSIVE.

The State banking commissioner has exclusive jurisdiction to institute involuntary proceedings to wind up an insolvent bank (3 Comp. Laws 1929, § 11959).

12. SAME—PLEADING—PARTIES.

Allegation that bank was being voluntarily liquidated *held*, sufficient to authorize suit in its name by its liquidating agent to enforce stockholders' statutory liability, where question is raised by motion to dismiss (3 Comp. Laws 1929, §§ 11945, 11953).

13. SAME—CONTRACT FOR LIQUIDATION—CONSIDERATION.

Agreement whereby bank in voluntary liquidation transferred all its assets, including right to enforce stockholders' contingent liability, to liquidating agent which agreed to assume all liabilities and return excess assets, if any, *held*, supported by adequate consideration (3 Comp. Laws 1929, §§ 11945, 11953).

14. SAME—NOTICE OF STOCKHOLDERS' MEETING—SCOPE.

Notice that bank stockholders' meeting was called for purpose of authorizing whatever was necessary to liquidate and close up business and affairs of bank *held*, sufficiently broad to include possibility that agreement might be made with liquidating agent to empower it with enforcement of stockholders' statutory liability in behalf of bank in case assets were insufficient to discharge liabilities (3 Comp. Laws 1929, §§ 11945, 11953).

15. SAME—STOCKHOLDERS' STATUTORY LIABILITY—ENFORCEMENT.

Stockholders' statutory liability may be enforced before all assets of the bank are liquidated (3 Comp. Laws 1929, § 11945).

16. SAME—LIABILITY MAY NOT BE NULLIFIED BY CONTRACT.

Double liability of banks' stockholders, in event bank's liabilities exceed its assets, is statutory and cannot be nullified by arrangement or contract of stockholders (3 Comp. Laws 1929, § 11945).

17. SAME—ACTION BY LIQUIDATING AGENT NOT PREMATURE.

Suit by liquidating agent to enforce bank stockholders' statutory liability brought before all of assets were liquidated *held*, not premature on that account (3 Comp. Laws 1929, §§ 11945, 11953).

Appeal from Wayne; Keidan (Harry B.), J. Submitted January 25, 1935. (Docket No. 59, Calendar No. 37,959.) Decided April 8, 1935.

Bill by The American State Bank of Detroit and First Wayne National Bank of Detroit against Charles D. Aaron and others to enforce stockholders' liability and other relief. From denial of defendants' motions to dismiss, defendant George E. Brand and others appeal. Affirmed.

*Stevenson, Butzel, Eaman & Long* and *Bulkley, Ledyard, Dickinson & Wright,* for plaintiffs.

*George E. Brand* and *Joseph B. Beckenstein,* for defendant Brand and others.

*Harold R. Martin* and *Harold H. Emmons,* for defendant Martin and others.

NORTH, J. The American State Bank of Detroit is a Michigan banking corporation. The First Wayne National Bank of Detroit, a national banking corporation, is a consolidation of Peoples Wayne County Bank and First National Bank of Detroit and possesses all the property and rights of the consolidated banks. To some extent the corporate names of the First Wayne National Bank and of the Peoples Wayne County Bank will be used herein as being interchangeable; and for brevity we will, as a rule, refer to the respective banks as the American bank, the Wayne bank and the Peoples bank. This suit in chancery was brought against the stockholders of the American bank to enforce stockholders' statutory liability as a means of securing funds with which to reimburse the Wayne bank for moneys expended by it or by its predecessor, Peoples bank, incident to its undertaking to liquidate and wind up the business of the American bank. Motions to dismiss were made by various defendants. These motions were denied by the circuit judge. Leave having first been obtained, defendants have appealed.

Plaintiffs by their bill of complaint also sought to recover a bank stock assessment ordered by the banking commissioner upon the stock of the American bank. The circuit judge held that this suit could not be sustained "as one for the collection of the assessment levied under section 44 of the banking act

(3 Comp. Laws 1929, § 11941), but only as one for the enforcement of the stockholders' liability under section 48 of that act (3 Comp. Laws 1929, § 11945)." Plaintiffs have not appealed from this holding; and it is not here for review. Reference herein to such stock assessment is material only insofar as it bears upon the factual aspect of the case in the light of which the questions of law must be determined. In a brief filed in behalf of a portion of the appellants they summarize the facts as follows:

"On March 12, 1931, pursuant to requisition of the banking commissioner, the American bank levied a 100 per cent. assessment against its *capital stock*. At the same time the Peoples bank offered to assume all the American's liabilities in consideration of a conveyance and transfer to it of all of the American's assets and to pay to the latter's stockholders any surplus realized by the Peoples above the amount of the assumed liabilities. The offer stated that the 'assets' to be so conveyed included said stock assessment 'and all liability of the stockholders (of the American) under the general banking laws of Michigan,' and required approval by the American's directors and stockholders. The directors approved. Notice of stockholders' meeting was given which referred to the offer on file, but made no reference to the stock assessment or stockholders' liability; but did mention that any surplus realized was to be paid to the American's stockholders. At the stockholders' meeting more than two-thirds of the stockholders voted to approve the offer and to place the bank in liquidation for carrying out the same. *Thereafter,* without other ratification or approval by the stockholders, formal agreement between the banks and bill of sale by the American were executed and delivered. *The stockholders of the American were not parties to this agreement,* which provided specifically that there was assigned

to the Peoples the stock assessment and all liability of stockholders under section 48 of the banking act. It was also provided that the Peoples 'as assignee' or in the American's name could enforce such liability. By this contract the entire business of the American, including its good will, customers and depositors, was transferred to the Peoples, unconditionally and absolutely, and the Peoples had absolute power of disposition of the assets, *uncontrolled by the banking commissioner,* or court. The contract gave options to the American, or its stockholders, to repurchase some assets before June 1, 1931. The Peoples thereupon closed the American and after proceeding to a partial liquidation of the assets so conveyed began (this) suit against all of the American's stockholders to collect, by personal money decree, on the assessment and on claimed double liability under section 48. Although the American refused to join in the suit, it was named as a plaintiff. The alleged liquidation by the Peoples was not under the supervision of the banking commissioner, or any court. Certain defendants unsuccessfully moved to dismiss the bill."

For decision of motions to dismiss we accept the allegations of the bill as true. From these it appears that the stockholders of the American bank decided upon and undertook voluntary liquidation. At the stockholders' meeting held March 27, 1931, a resolution passed by the "stockholders owning two-thirds of" the bank's capital stock (as required by 3 Comp. Laws 1929, § 11953) in part reads:

"That * * * The American State Bank do now go into and is hereby placed in liquidation for the reason that a forced liquidation is clearly imminent if a voluntary liquidation is not voted by the stockholders."

The true situation in the case will be more apparent by the following amplification of appellants'

quoted statement of facts. On the 12th of March, 1931, the banking commissioner ordered the American bank to make a 100 per cent. stock assessment. It is not claimed payment was made by any of the stockholders. On the same day the Peoples bank made the following offer in writing to the American bank:

"Pursuant to the request of your bank for assistance, this bank hereby agrees to assume and perform all of the deposit and other liabilities of your bank in consideration of the conveyance and transfer by your bank to this bank of all of the assets of your bank of whatsoever kind or nature. * * * *It is understood that the assets so to be acquired shall include * * * all liability of stockholders under the general banking law of the State of Michigan.* * * *

"From the time of such action by the directors of your bank (*i. e.,* acceptance of proposal and calling of stockholders' meeting), this bank will *by loan* with or without security or otherwise as this bank may determine provide in an appropriate and adequate manner for serving the depositors and customers of your bank to the full measure of the contracts and of the duties of your bank to them.

"Any surplus which may be realized by this bank out of the assets of your bank over and above what shall be required to discharge all liabilities so assumed will be paid over by this bank to the stockholders of your bank or their representatives and assigns."

At a stockholders' meeting of the American bank called for the purpose of considering and acting upon the proposal of the Peoples bank, a resolution was passed containing the following:

"That the letter of agreement submitted by Peoples Wayne County Bank to the board of directors of The American State Bank of Detroit under date of March 12, 1931, whereby said Peoples Wayne

County Bank agreed to assume and perform all deposit obligations and other liabilities of said American State Bank in consideration of the conveyance and transfer of all assets of said American State Bank to said Peoples Wayne County Bank *on the terms and conditions set forth in said letter of agreement,* which said letter of agreement was by said board of directors accepted by resolution duly adopted at their meeting held on said date, and now laid before this meeting of stockholders, be and the same hereby is approved."

The resolution further provided that the directors of the American bank be empowered to take all action appropriate to carrying out the terms of the agreement between the two banks and of the provision in the resolution for voluntary liquidation of the American bank, and to agree upon by "proper writing or writings * * * in the names of both of said banks *the manner, terms and conditions by which said Peoples Wayne County Bank shall liquidate the assets, liabilities and affairs of said American State Bank.*" Pursuant to the plan adopted an agreement and bill of sale (one instrument) was executed by the American bank to the Peoples bank whereby all the assets of the former were transferred to the latter; details of transfer being accomplished by deeds, assignments, etc. This instrument contains the following:

"The assets of said The American State Bank of Detroit so assigned and transferred *shall include* * * * *all liability of stockholders under the general banking law* of the State of Michigan and particularly section 48 thereof. The enforcement of said * * * liability * * * may be in any one or more, jointly or concurrently, of the ways following, namely:—

"By said Peoples Wayne County Bank as assignee thereof by virtue hereof, or in the name of said

American State Bank, or, if required by second par-
ty (Peoples bank), the same shall be enforced by said
American State Bank in the exercise of its own right
and power so to do under section 48 of the general
banking law being in process of liquidation and to
that end said American State Bank shall maintain
its corporate existence effectual for such purpose
until such time as second party shall certify in writ-
ing that necessity therefor no longer exists. If en-
forced by said American State Bank the proceeds
thereof shall be paid over to second party as and
when realized.''

Paragraph 4 of the bill of sale and agreement pro-
vides:

''Second party upon taking over possession of the
assets of first party pursuant to these presents
* * * shall * * * proceed in due and orderly course
to liquidate the assets and affairs of said American
State Bank * * * in manner following.'' Here fol-
low details of the plan adopted.

Fundamentally appellants' contention that the bill
of complaint should be dismissed is based upon their
claim that the transaction consummated between the
Peoples bank and the American bank was a sale by
the latter of all of its assets in consideration of which
the former assumed and agreed to pay all liability of
the American State Bank; and in consequence there-
of the American bank now has no creditors and there
is no justification for the enforcement of statutory
stockholders' liability. We think this contention
cannot be sustained.

If, as we think, the agreement entered into be-
tween the American bank and the Peoples bank is
not illegal, it, like any other contract, should be con-
strued and enforced according to its express terms.
When so construed it is evident that the agreement
was not one for a sale of the assets of the American

bank, nor did it effect a consolidation or merger of the banks. Instead it was an undertaking by the Peoples bank to act as a liquidating agency of the American bank and incident to liquidation to pay in full the creditors of the American bank in consideration of there being transferred to the former bank all the assets of the latter, including what may be called the contingent asset of its stockholders' statutory liability; and in case an excess of assets over liabilities came into the hands of the Peoples bank such excess, if derived from ordinary bank assets, was to be returned to the American bank stockholders; but if such excess accrued from the proceeds of enforced stockholders' statutory liability, it was to be returned *pro rata* to those from whom it had been collected. We have noted but briefly the provisions of the agreement entered into between the parties; but construed as a whole, it leads clearly to the conclusion that neither of the parties understood or intended it to be an out and out sale by the one and a purchase by the other of the American bank's assets. Instead it was what might be termed a liquidation contract. The effect of it was that the Peoples bank, in all probability, absorbed the business or patronage of the American bank. In consideration of this the Peoples bank undertook to liquidate the assets of the American bank; and upon condition of its having the proceeds of such liquidation, together with proceeds of enforced statutory liability if necessary to satisfy creditors, the Peoples bank agreed to pay in full the obligations of the American bank. And further the Peoples bank was to account to the American bank or its stockholders for any money received from the liquidation of its assets over and above the amount required to discharge its obligations. We think it clearly appears from this record that the stockholders of the American bank determined to use

the Peoples bank as an agency or instrumentality through which voluntary liquidation of the former bank could and would be accomplished; and that the agreement entered into is the written embodiment of the plan adopted. This agreement, considered as a whole, was clearly not intended to be a bill of sale; and insofar as it embodies provisions characteristic of a bill of sale, they are only incidental to the liquidation agreement consummated between the parties. The so-called bill of sale was nothing more than an assignment of the assets of the liquidating bank to its liquidating agent to be used for a specific purpose and, in the event of an excess of assets over liabilities, an accounting therefor to the American bank or its stockholders. Such agreements are not uncommon and courts have interpreted and enforced them in accordance with their terms and obvious purpose. *American Nat'l Bank* v. *Holsen,* 331 Ill. 622 (163 N. E. 448); *American Nat'l Bank of Macon* v. *Commercial Nat'l Bank of Macon,* 165 C. C. A. 537 (254 Fed. 249); *Hightower* v. *American Nat'l Bank of Macon,* 263 U. S. 351 (44 Sup. Ct. 123). This latter case is peculiarly applicable to the various phases of the instant case because of similarity of facts and of contentions made by the respective parties, and also because the provisions in the national banking act for voluntary liquidation and those imposing stockholders' double liability are, in legal effect, the same as corresponding provisions of the Michigan banking act. But the Michigan act does not contain an express provision empowering a creditor of the bank to bring suit to enforce the statutory liability. For this reason the *Hightower Case* just above cited is not an authority on the procedural question hereinafter considered.

*American Nat'l Bank* v. *Holsen, supra,* is a case wherein the stockholders of a bank "resolved to go

into liquidation and to accept a proposal'' of another national bank in many respects similar to the agreement in the instant case; and it was there held that the bank making such proposal did not become a creditor of the liquidating bank, but instead was a purchaser of the assets of such liquidating bank. We think the Illinois case is distinguishable from the instant case wherein, as above noted, the contingent asset of stockholders' liability was expressly and carefully embodied in the agreement as passing to the Peoples bank. This does not seem to have been done with such particularity in the agreement passed upon by the supreme court of Illinois in the *American National Bank Case*. Instead a bond was given to save from loss the bank which made the proposal to the liquidating bank. We may note another distinguishing aspect of the case at bar in that here the proposal of the Peoples bank provided for advancements to be made to the American bank to meet demands of depositors *before* its stockholders decided upon voluntary liquidation. In so doing the Peoples bank clearly became a creditor. The importance of this is stressed in *American Nat'l Bank* v. *Commercial Nat'l Bank, supra,* where the rule of construction is stated as follows:

''The contract contains expressions and provisions which do not seem to us to be reconcilable with the existence of an intention other than that the making by the American bank of the agreed disbursements in taking care of the liabilities of the Commercial bank was to have the effect of creating a debt or debts owing by the latter to the former.''

In *American Nat'l Bank* v. *Holsen, supra,* it is said:

''The rights of the parties in each case depend upon the terms of the contract under which the payments or advancements were made.''

As stated above, the agreement in the instant case was not one of sale of the assets of the liquidating bank, instead it was an agreement under the terms of which the Peoples bank acted as a liquidating agency.

As bearing upon other legal questions hereinafter considered the following facts in the instant case may be noted. On the date of the agreement and bill of sale the American bank suspended business. Its deposit obligations and other liabilities were met by the Peoples bank pursuant to the provisions contained in the agreement and bill of sale. It now appears that through the agency of the Peoples bank or its successor disposition has been made of a substantial portion of the assets of the American bank. Such action, liquidation of assets, incident to the bank's voluntary liquidation is contemplated and authorized by the statute. 3 Comp. Laws 1929, § 11953. It has been ascertained that other assets of the American bank are worthless to the amount of approximately $7,000,000. It also appears that the Peoples bank, or its successor, has expended incident to paying obligations of the liquidating bank, including its depositors, substantially $27,000,000 in excess of the amount received from liquidation of the assets of the American bank.

Obviously, if the Wayne bank, or its predecessor, stands in the position of a creditor of the American bank, the necessity has arisen for recourse to and enforcement of the statutory liability of its stockholders. Since we hold that the agreement entered into between the two banks is not a bill of sale, but instead is a liquidation agreement, it necessarily follows that the Wayne bank, or its predecessor, has become a creditor of the liquidating bank in a large amount; and as such under the agreement with the American bank, if not otherwise, the Wayne bank is

entitled to have recourse to and enforcement of the statutory liability of the American bank's stockholders to the extent necessary to satisfy this indebtedness.

But it is contended in behalf of appellants that:

"No double liability can attach unless there is liquidation under the jurisdiction and control of the banking department or court. The banking act is complete and comprehensive. It covers all possible contingencies, prescribes and regulates the mode of liquidation that may result in double liability, and, in detail, controls acquisition by one bank of the assets of another."

In accord with the foregoing, it is the contention of appellants that the statutory liability cannot be enforced against stockholders of the American bank in this suit because it is not brought by a proper plaintiff. The statute containing the provisions as to stockholders' liability and the enforcement thereof, reads:

"The stockholders of every bank shall be individually liable, equally and ratably, and not one for another, to satisfy the obligations of said bank to the amount of their stock at the par value thereof, in addition to the said stock. * * * Such liability may be enforced in a suit at law or in equity *by any such bank in process of liquidation,* or by any receiver, or other officer succeeding to the legal rights of said bank." 3 Comp. Laws 1929, § 11945.

Under the express terms of the statute the American bank is authorized to bring a suit at law or in equity to enforce the statutory liability of its stockholders.

Appellants contend that the statutory double liability of its stockholders was not an asset of the

American bank and could not be assigned. Strictly speaking, stockholders' statutory liability is not an assignable asset of a bank. 7 C. J. p. 742; 7 R. C. L. p. 389. None the less such liability is in the nature of a contingent asset (*Murray* v. *Sill* [C. C. A.], 7 Fed. (2d) 589), and is available when required to satisfy the bank's obligations. Whenever a bank goes into voluntary liquidation and its insolvency is disclosed, "Such liability may be enforced * * * by any such bank." 3 Comp. Laws 1929, § 11945. And if, as in the instant case, the bank has selected a liquidating agent and for the purpose of liquidation has assigned to such agent all its assets, together with the contingent statutory liability and the power to enforce the same, then the agent in behalf of the bank in liquidation, may institute and prosecute a suit to enforce the statutory double liability to the extent required to pay the bank's obligations. As noted above, the statute contemplates enforcement of double liability incident to voluntary liquidation of an insolvent bank. The American bank is party plaintiff herein. This is true, notwithstanding, as recited in the bill of complaint, that when demand was made upon the American bank to act as a party plaintiff in bringing suit to enforce its stockholders' statutory liability it refused so to do, disregarding the express provision in its agreement with the Peoples bank that it would maintain its corporate existence and if required ·to do so would exercise "its own right and power," under the statute to enforce stockholders' liability. The instant case was properly brought by the Wayne bank as the liquidating agent of and in the name of the American bank. In so holding it is important to note, we are not here concerned with proceedings

brought by the banking commissioner for the involuntary winding up of an insolvent bank. In such cases the statute vests the banking commissioner with the exclusive right to institute the proceedings.* *Stewart* v. *Algonac Savings Bank,* 263 Mich. 272. The instant case is one of voluntary liquidation sought to be accomplished by methods adopted by the bank itself with the approval of its stockholders. Except by placing the matter under the supervision and control of the banking commissioner, the statute contains no provision covering or even outlining the details of the procedure by means of which a bank or those representing it shall accomplish liquidation of its assets after voluntary liquidation has been determined upon by the stockholders owning at least two-thirds of the capital stock. So far as material, the statute reads:

"Any bank organized or existing under the provisions of this act may go into liquidation and be closed by a vote of its stockholders owning two-thirds of its capital. * * * Such bank so in liquidation shall make a report to the commissioner of the banking department at least once each thirty days from and after the time the bank ceases to transact business as such, which report shall give a list of assets wholly or partially realized upon, together with the amount of each so remaining uncollected, and also a list of the liabilities retired by application of such amount so realized. Said commissioner of the banking department shall have power to examine into the affairs of the bank so liquidating, at any time for the purpose of determining that the rights of the creditors and depositors are being subserved." 3 Comp. Laws 1929, § 11953.

The proceedings in the instant case are within the statutory provision. Further, in view of our hold-

---

* See 3 Comp. Laws 1929, § 11959.—Reporter.

ing herein that the instant suit is properly brought in the name of the American bank as a plaintiff, the question of the assignability of statutory liability is not controlling, but academic only.

On behalf of certain appellants the question has been raised as to whether the American bank was in fact insolvent; and hence the query as to the right to enforce statutory liability. On this record there can be only one answer to the question. It appears from the allegations in the bill (which we must accept as true) that the banking commissioner had determined "the capital of said bank was impaired;" that he had ordered a 100 per cent. stock assessment; that a request for financial assistance was made to the Peoples bank by the American bank; that the stockholders voted to and did place the American bank in liquidation; that "the method and provisions for liquidation" of the American bank were agreed upon; that the American bank suspended business; that it was in process of liquidation at the time this suit was started; and further liquidation proceedings have disclosed that the American bank's liabilities are greatly in excess of its assets. Thus, even in the absence of a specific allegation of insolvency, that fact fairly appears on the face of the bill. But aside from this, for the purpose of maintaining this bill of complaint it is enough that voluntary liquidation of the American bank was clearly alleged. The statute expressly provides that double liability of stockholders may be enforced by any bank in process of liquidation. See 3 Comp. Laws 1929, § 11945, above quoted.

From the facts hereinbefore stated it is apparent there was adequate consideration to support the contract entered into between the American bank and the Peoples bank. Appellants' contention to the contrary cannot be sustained.

The sufficiency of the notice by which the meeting of the stockholders of the American bank was called is challenged. It is claimed to have been insufficient because it did not recite the provision in the proposed agreement that the right to enforce the statutory liability of the stockholders of the American bank should be assigned to or enforced in behalf of the Peoples bank in event the assets of the American bank were insufficient to discharge its liabilities. We think the notice was sufficiently broad in its terms. It specifically gave notice that the meeting was for the purpose of "acting upon and authorizing whatever may be necessary or appropriate to effectuate * * * the liquidation and closing up of the business and affairs of The American State Bank." The possibility or probability of there being an enforcement of statutory liability was clearly germane to the notice of "liquidation and closing up of the business and affairs" of the bank.

Appellants also contend that this suit was prematurely brought, this on the ground that it appears from the bill of complaint "that the alleged liquidation was not yet consummated." Appellants cite and, in part at least, rely upon *Commonwealth of Kentucky, ex rel. Wilson*, v. *LaGrange Bank & Trust Co.*, 251 Ky. 372 (65 S. W. [2d] 65). In the cited case two banks designated as the "old banks" transferred their assets to a bank designated as the "new bank" in consideration of the latter's assuming the liabilities of the former. Later the new bank went into voluntary liquidation and placed its assets and business in the hands of the State banking commissioner. The commissioner sought to enforce statutory liability against the stockholders of the old banks before completing liquidation of their assets which had come into his custody from the

new bank. Enforcement of the statutory liability was denied; but for reasons which appear from the following quoted from the court's opinion:

"The old banks only obligated themselves to pay off any deficit that might exist after the assets transferred to the new bank had been liquidated. Not until then were either of the old banks obligated by the contract to pay a penny. Since the conditions under which the old banks might owe the new bank anything have not been met, the new bank has no claim against the old banks."

The agreement in the instant case contains no provision similar to that upon which decision was based in the Kentucky case, and it is therefore not controlling. The right to enforce stockholders' liability of an insolvent bank before liquidating all of its assets is no longer an open question in this State. *Foster* v. *Row,* 120 Mich. 1 (77 Am. St. Rep. 565); *Petty* v. *Bay City Bank,* 243 Mich. 362; *Reichert* v. *Farmers' & Workingmen's Savings Bank,* 257 Mich. 500 (81 A. L. R. 1461); *First Nat'l Bank & Trust Co.* v. *Storms,* 265 Mich. 453. The double liability of the stockholders, in event the liabilities of the bank exceed its assets, is statutory (*Fors* v. *Thoman,* 267 Mich. 148) and cannot be nullified by an arrangement or contract entered into by the stockholders. *First Nat'l Bank & Trust Co.* v. *Storms, supra.* This suit was not prematurely brought.

Denial by the circuit judge of defendants' motions to dismiss is affirmed. Costs to appellees.

POTTER, C. J., and NELSON SHARPE, WIEST, BUTZEL, and EDWARD M. SHARPE, JJ., concurred. FEAD and BUSHNELL, JJ., did not sit.