Being unable to agree with the conclusion reached by Mr. Justice FEAD, I state my views.
In my opinion, the determinative question is: Can a stockholder's assessment be collected under 3 Comp. Laws 1929, § 11945, when at the time of the attempted enforcement of the assessment the bank is continuing its ordinary business under its original charter?
The cited section (section 48 of the general banking act, Act No. 66, Pub. Acts 1929) provides:
"The stockholders of every bank shall be individually liable, equally and ratably, and not one for another, to satisfy the obligations of said bank to the amount of their stock at the par value thereof, in addition to the said stock. * * * Such liability may be enforced in a suit at law and in equity by any such bank in process of liquidation, or by any receiver, orother officer succeeding to the legal rights of said bank." *Page 503 
Section 44 of the act (3 Comp. Laws 1929, § 11941) provides for assessments and their collections against stockholders of going banks and these being in the same act must be construed together. Steiner v. Monroe State Savings Bank, 274 Mich. 303.
This language of section 11945 is not new and was construed in Foster v. Row, 120 Mich. 1, 12 (77 Am. St. Rep. 565):
"It (the liability) can be enforced only by a bank in process of liquidation," etc.
A like understanding of the section is gained from the reasoning of the court's opinion in American State Bank ofDetroit v. Aaron, 271 Mich. 147, 161 (100 A.L.R. 1266):
"Whenever a bank goes into voluntary liquidation and its insolvency is disclosed, 'Such liability may be enforced * * * by any such bank.' 3 Comp. Laws 1929, § 11945. And if, as in the instant case, the bank has selected a liquidating agent and for the purpose of liquidation has assigned to such agent all its assets, together with the contingent statutory liability and the power to enforce the same, then the agent in behalf of the bank in liquidation, may institute and prosecute a suit to enforce the statutory double liability to the extent required to pay the bank's obligations. As noted above, the statute contemplates enforcement of double liability incident to voluntary liquidation of an insolvent bank."
In the case before us the bank is neither in process of liquidation" nor does it have a "receiver or any other officer succeeding to the legal rights of said bank." The last-quoted clause can have no broader meaning than that which precedes the conjunctive "or" and must refer to a liquidating agency.American State Bank of Detroit v. Aaron, supra. *Page 504 
But my Brother reasons that: "While liquidation of a corporation is usually a step in its dissolution, the latter is not a necessary element of the former," and says: "Under the general banking law, a bank in receivership (§ 11959) was in process of liquidation although under the next section (§ 11960) provision was made for its reorganization and resumption of business. Liquidation means realization on assets and discharge of liabilities."
There is no more connection between section 11960 and section 11945 than there is between section 11960 and section 11941. Arrangements to reopen the bank could and should be made just as well under conditions covered by section 11941. In fact, the words of section 11960, "impairment of capital stock" are exactly those of section 11941 and section 11960 is therefore applicable when "the impairment of capital stock" is made good.
It is difficult for me to agree that the facts here permit the conclusion that liquidation exists. A bank cannot be in the process of liquidation and at the same time be conducting business as a going concern. It cannot possess a double corporate personality of such an extremely contrasted nature.
"The very meaning of the word 'liquidation' implies the winding up of the affairs of a corporation." Assets RealizationCo. v. Howard, 70 Misc. 651 (127 N. Y. Supp. 798, 816).
In citing the foregoing with approval, the New York court of appeals said:
"The word 'liquidation' is susceptible of but one meaning when construed in connection with the language of the banking law, and the circumstances to which it was intended to apply. The agreement of the parties that the superintendent took charge of the affairs of the corporation for the purpose of *Page 505 
'liquidating' its affairs necessarily excludes his possession for any other purpose. The word 'liquidation' is synonymous with a 'winding up or settlement with creditors.' In its general sense, it means 'the act or operation of winding up the affairs of a firm or company by getting in the assets, settling with its debtors and creditors, and appropriating the amount of profit or loss.' Matter of Silkman, 121 App. Div. 202, 206, 207
(105 N.Y. Supp. 872, 875), affirmed 190 N.Y. 560
(83 N.E. 1131); Assets Realization Co. v. Howard, 70 Misc. 651 (127 N.Y. Supp. 798), affirmed 152 App. Div. 900 (136 N.Y. Supp. 1130);211 N.Y. 430 (105 N.E. 680)." Lafayette Trust Co. v. Beggs,213 N.Y. 280 (107 N.E. 644).
My Brother's authority, Doty v. Love, 295 U.S. 64
(55 Sup. Ct. 558, 96 A.L.R. 1438), does not, I think, sustain a different view. In that case, the rights of the stockholders were not before the court, the action being brought by dissenting creditors. The claim was made of denial of due process because the participating stockholders had been released from their personal liability. The court held that an error of judgment in the compromise of liabilities is not a taking of property or an impairment of contract in derogation of the restraints of the Constitution of the United States.
But it is argued that additional power was conferred by Act No. 32, Pub. Acts 1933, as amended by Act No. 95, Pub. Acts 1933, and especially sections 5 and 7 thereof.
Section 5 gives to the banking commissioner both the right and power, with the approval of the governor to proceed to wind up the affairs of a bank or continue its operation and to collect the stockholders' assessments within the meaning of section 11945. The right given is not an enlargement of a right already possessed. The language of the section *Page 506 
refers to the banking act of 1929, where this right is limited to the winding up process of liquidation.
If, as it is claimed, any additional liability is imposed on a stockholder by section 5, section 7, or any other portion of the 1933 acts, then it might properly be urged that the stockholder would be deprived of his property without due process. For under the facts presented in this cause, if collection is enforced, an additional liability is certainly imposed upon the stockholders.
"If any portion of assessment is not required to pay creditors or expenses of administration, it should be returned to assessed stockholders." Reichert v. Farmers' Workingmen'sSavings Bank (syllabus), 257 Mich. 500 (81 A.L.R. 1461).
Here it is proposed to subject the amount of stockholders' assessments collected together with other assets of the bank to the vicissitudes and hazards of a going banking business. Past experience certainly demonstrates that no one can accurately foretell the outcome of such a venture. How then can any portion of the assessment not required to pay creditors or expenses of administration be ascertained and returned to the assessed stockholders? If it cannot be returned then by what authority of law are the contributing stockholders deprived of their clear legal right to its return?
The conclusion seems to me to be inescapable that by the language of the banking act there could be no valid stockholders' assessment against the appellant estate under the facts presented.
The judgment should be vacated, without a new trial. Costs to appellant.
POTTER, J., took no part in this decision. *Page 507