SOUTH SIDE BANK & TRUST COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 6993.   Promulgated May 7, 1946.

*L. E. Renard, Esq.*, for the petitioner.
*Brooks Fullerton, Esq.*, for the respondent.

OPINION.

HILL, *Judge*: The petitioner contends that the agreement pursuant to which it took over the assets and assumed the liabilities of Dollar Bank constituted petitioner the creditor of Dollar Bank; that, since the relationship of debtor and creditor existed, the directives of the State Banking Department to make the charge-off of $15,000 in 1940 and 1941, together with the actual charge-off in each year, are conclusive as to the partial worthlessness of the debt (Regulations 103, art. 19.23 (k)–1 (c)) ; and that, therefore, petitioner is entitled to the deductions claimed. The respondent contends that the obligation of Dollar Bank and its directors to pay anything to petitioner is contingent upon the determination of a deficit, which has not been determined, and that, even though an unconditional debt exists, which he denies, petitioner has failed to prove that its right to reimbursement from Dollar Bank and its directors and stockholders is partially uncollectible. The respondent does not contend that no debt exists on the ground that the agreement involved constituted a sale of assets

of Dollar Bank to petitioner in consideration of an assumption of liabilities, with an accounting over for any surplus realized, as in *Corn Exchange National Bank & Trust Co.*, 46 B. T. A. 1107, 1117, for on brief he states:

> * * * it is evidence that the persons setting up the accounts took the view that South Side [petitioner] was a liquidating trustee. He was not altogether consistent in that view, but that view is the correct view. South Side had legal title to the assets but not beneficial title. South Side was a fiduciary, was required to account for the *surplus* of money realized on liquidation *above* the liabilities of Dollar which South Side assumed and was to be reimbursed for a deficit *if and when* one occurred.

The agreement provides for the transfer of all the assets of Dollar Bank to petitioner in consideration of the assumption by petitioner of Dollar Bank's deposits and bills payable of $90,000. It further provides that "as and when" petitioner "has definitely determined and ascertained the value of the assets transferred" to it "then and thereupon" it "will pay over" to Dollar Bank, or its liquidating trustee. "any surplus that may be due owing to excess moneys realized from" the transferred assets "over and above the bills payable and the deposits" of Dollar Bank. In the agreement Dollar Bank, as a corporation, and its directors, in their individual capacity, guaranteed to petitioner "the payment of any deficit that may be ascertained and incurred from the sale of the assets" transferred, and "such sum of money as may be insufficient to pay in full the bills payable and the deposits" as guaranteed by petitioner, and to that end the directors of Dollar Bank, as individuals, agreed to sign a separate guarantee. Such separate guarantee is not in evidence. From the above it clearly appears that Dollar Bank and its directors were liable to petitioner as guarantors in the event a deficit was "ascertained and incurred from the sale of the assets" transferred to petitioner. Until such deficit occurred, petitioner had no claim against Dollar Bank or any one else for reimbursement.

The agreement was to be effective as of eight o'clock of the morning of November 18, 1929. The deposits and bills payable of Dollar Bank as of November 16, 1929, aggregated $1,078,230.76. Presumably, that is the amount of deposits and bills payable assumed by petitioner. The exact amount thereof as of eight o'clock of the morning of November 18, 1929, is not disclosed. As of November 16, 1929, the book value of all of the assets of Dollar Bank was $1,555,773.93. As of November 27, 1929, the book value of the assets was $1,756,910.79 and the total liabilities other than stock liability were $1,278,635.25, which included as bills payable $300,000 advanced by petitioner on November 19, 1929, and $90,000 advanced by petitioner between November 18 and 27, 1929. On November 27, 1929, petitioner set up a new ledger

of the assets and liabilities of Dollar Bank. In setting up the new ledger the assets were reduced by $478,275.54 to $1,278,635.25. It is admitted by petitioner that the reduction of "Loans and Discounts" by $195,663.91 was an arbitrary reduction. There is no explanation for the reduction of "Bonds and Stocks" by $236,084.70 or the reduction of "Banking House" and "Fixtures" by $46,526.93, except that the reduction of bonds and stocks is designated as depreciation. It may be that the reduction in the assets was the result merely of the elimination of three items on the liability side of the old ledger of Dollar Bank of capital stock of $200,000, surplus of $200,000, and undivided profits of $78,275.54, totaling $478,275.54. In the new ledger an account was set up entitled "Assets of Dollar State Bank," to which the amount of $1,278,635.25 ($1,756,910.79—$478,275.54) was debited. Another account, captioned "Liabilities of Dollar Bank," was set up, to which the amount of $1,278,635.25 was credited. Certain items were debited and credited to such accounts, the amounts of all of which are not disclosed. The balances in each such account as of January 1, 1940, 1941, and 1942, are shown but there is no evidence to show just how these balances were arrived at. Bookkeeping entries are merely evidentiary and are not conclusive or determinative of tax liability. *Helvering* v. *Midland Mutual Insurance Co.*, 300 U. S. 216. As appears from the letter of the Department of Banking dated December 10, 1941, liquidation of Dollar Bank had not then been completed. There is no evidence which would support a finding that petitioner at any time definitely determined and ascertained a deficit incurred from the sale of the assets or insufficiency in moneys realized from the assets of Dollar Bank to meet or cover in full its bills payable and liability to depositors. Until petitioner did so, it had no enforceable claim against Dollar Bank, as a corporation, or against the directors of Dollar Bank. See *Commonwealth* v. *LaGrange Bank & Trust Co.*, 251 Ky. 372; 65 S. W. (2d) 65. Furthermore, even if a deficit had been determined, there is no showing that the amount thereof was not recoverable under the guarantee of the directors of Dollar Bank and Dollar Bank or from the stockholders of Dollar Bank.

*American State Bank of Detroit* v. *Aaron*, 271 Mich. 147; 260 N. W. 141, and *Hightower* v. *American National Bank*, 263 U. S. 351, cited by petitioner, are distinguishable on the facts. In *American State Bank of Detroit* v. *Aaron*, a suit brought in equity to enforce the liability of shareholders for the bank's debts, the court specifically pointed out that:

* * * the proposal of the Peoples Bank [liquidating agent] provided for advancements to be made to the American Bank to meet demands of depositors before its stockholders decided upon voluntary liquidation. In so doing the Peoples Bank clearly became a creditor. * * *

In *Hightower* v. *American National Bank*, *supra*, also involving a suit in equity to enforce the liability of the shareholders for the bank's debts, the American National Bank's obligation to pay the Commercial Bank's depositors and other liabilities as and when the same were presented for payment was effective prior to, and was not dependent or contingent upon, the contemplated closing and liquidation of the Commercial Bank, and advancements were made while the Commercial Bank remained open and continued to carry on in the customary way the banking business in which it was engaged, and at the time the suit was brought all that was to be done under the contract was practically completed, save that the obligation, if any, to reimburse the American National Bank for advancing money to pay the liabilities of Commercial Bank had not been fulfilled. Under the contract herein petitioner was not specifically required to make any advancement prior to taking over the assets of Dollar Bank. Petitioner did advance $300,000 in November 1929, which was debited to an account captioned "Dollar State Bank Liquidation Asset Account," and also $90,000, which was debited to the account "Dollar State Bank & Trust Co." However, the evidence fails to show the status of such accounts in the taxable years. Furthermore, as to the $300,000 advancement, it is alleged in the petition that such sum was repaid to petitioner shortly after November 18, 1929, by collections of Dollar Bank's deposits in other banks, from cash on hand in Dollar Bank's vaults, and from the sale of securities. The $90,000 advancement may have been similarly repaid.

It is our conclusion that the evidence presented fails to show that a debtor and creditor relationship arose out of the contract, inasmuch as there is no showing that there actually was a deficit in moneys realized from the assets sold to meet the liabilities of Dollar Bank guaranteed by petitioner.

The petitioner, in the alternative, contends that, if it be held that the agreement of November 18, 1929, is a bill of sale, then it should be entitled to loss deductions of $7,280.50 in 1940 and $73,868.57 in 1941. It appears that the amounts represent the net long term capital losses from the sale of securities claimed in the income tax returns for 1940 and 1941, respectively, filed by petitioner for Dollar Bank. We have not held that the agreement is a bill of sale, and petitioner treated the securities for tax purposes as those of Dollar Bank. There is no evidence to the contrary. Upon the record as made, petitioner is not entitled to such deductions.

*Decision will be entered for the respondent.*