HARDWARE DEALERS MUTUAL INSURANCE COMPANY

*v.* R. H. HIDEY, INC.

1. CONTRACTS — THIRD-PARTY   BENEFICIARIES — STATUTE — PUBLIC WORKS CONTRACTOR'S BOND.

    Property. owners or their subrogees were members of class entitled to maintain action as third-party beneficiaries against public works contractor and joint obligor surety on his bond specifically requiring him to protect obligee of the bond from claims for property damages arising from operations under the contract, the extent of the coverage into which the surety entered not affecting the matter of enforceability (CL 1948, § 691.541 *et seq.*).

2. PLEADING—MOTION TO DISMISS—WELL-PLEADED FACTS ASSUMED TRUE.

    All well-pleaded facts in the declaration are assumed as true in determining an appeal from an order granting motion to dismiss action as to surety on performance bond by contractor for construction of a public works.

3. ACTION—PARTIES—JOINDER—ABUTTING PROPERTY OWNERS TO PUBLIC WORKS CONSTRUCTION PROJECT.

    The rights of action of owners of property abutting public works project for damages arising from construction operation there carried on were not joint and the surety on his construction bond did not undertake to respond, in a single action, for the aggregate of the damages claimed by them, the fact that each property owner was entitled to bring an action not giving them a right that is joint (CL 1948, § 608.1).

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 12 Am Jur, Contracts § 274 *et seq.*
[2] 3 Am Jur, Appeal and Error § 945.
[3] 43 Am Jur, Public Works and Contracts §§ 214, 215.
[4] 29 Am Jur, Insurance § 1336.
[5] 4 Am Jur, Assignments § 35.
[6, 10, 11, 13] 1 Am Jur, Actions § 65 *et seq.*
[7, 12] 39 Am Jur, Parties §§ 30–32.
[8] 43 Am Jur, Public Works and Contracts § 81.
[9] 43 Am Jur, Public Works and Contracts § 81 *et seq.*

4. Subrogation—Insurance.

An insurer of property damage who becomes subrogated to the insured's right of action against the tort-feasor is in no better position than the subrogor.

5. Action—Abutting Property Owners to Public Works Construction Project—Assignment.

One abutting property owner who was damaged by reason of construction operations at a public works project could not assign the rights of action of other similarly damaged property owners against the same defendant public works contractor, the causes of action of such plaintiffs not being joint (CL 1948, § 608.1).

6. Same—Joint Trial of Several Actions—Joinder of Action.

The fact that 2 or more suits by different plaintiffs against the same defendant may, by agreement of the parties approved by the court, or by court order, if the facts so justified, have been tried together, does not affect the question as to the right to join such causes of action in 1 case (CL 1948, § 608.1).

7. Parties—Joinder.

Whether a particular situation involving the right of joinder of parties plaintiff arises in contract or in tort is not of controlling importance as each case must be determined with reference to its own facts and circumstances.

8. Municipal Corporations—Public Works—Performance Bond—Insurance.

The purpose of provision of a public works construction contractor's performance bond with reference to the maintenance of public liability and property damage insurance was to impose liability on the contractor, to the exclusion of the city, in the event that abutting property was damaged by wrongful acts of the contractor or its agents in carrying on the project.

9. Action—Torts—Public Works Construction Project—Abutting Property Owners.

An abutting property owner's right of action against a public works construction contractor and its public liability and property damage insurer for damages to his property because of operations on the project sounds in tort and right of recovery rests on a showing of wrongful conduct resulting in damage to abutting property.

10. Same—Public Works Construction Project—Abutting Property Owners—Differing Issues—Joinder of Action.

The causes of action of some 17 plaintiffs, either property owners or insurer subrogees thereof who seek recovery from public

works construction contractor and surety on its performance bond for damages to property claimed to abut the project by reason of 4 months of operations conducted by the contractor, were not joint, since plaintiffs were not seeking precisely the same relief and different issues might be presented as to the different plaintiffs to determine time and extent of damage, proximate cause and whether or not the property abutted the project and was covered by the contractor's insurance policy (CL 1948, § 608.1).

11. SAME—JOINDER OF CAUSES—CONVENIENT ADMINISTRATION OF JUSTICE.

The joinder of causes of action in order to promote the convenient administration of justice is permissible when sufficient grounds appear for uniting the particular causes involved and it must appear that the doing of justice as between the parties will be in some way favorably affected if the joinder be permitted (CL 1948, § 608.1).

12. SAME—JOINDER OF PLAINTIFFS—CONVENIENT ADMINISTRATION OF JUSTICE.

Declaration by 17 property owners and subrogees thereof, claiming damages from public works construction contractor and surety on its performance bond, which failed to show that any one of the plaintiffs would have been prejudiced had it been necessary for such plaintiff to have brought a separate suit to recover damages, was properly dismissed by trial court as an improper joinder of plaintiffs, there having been alleged no sufficient grounds to promote the convenient administration of justice (CL 1948, § 608.1).

13. SAME—JOINDER OF ACTION—EXPEDITION OF TRIAL.

The statute permitting the joinder of causes of action does not contemplate merely the expedition of the work of the court and is a right wholly different than where several cases arise out of the same facts and are tried together in the general interests of the parties litigant and for the expedition of trials (CL 1948, § 608.1).

EDWARDS, J., dissenting.

Appeal from Wayne; Murphy (George B.), J. Submitted October 2, 1956. (Docket No. 7, Calendar No. 46,685.) Decided September 4, 1957.

Assumpsit by Hardware Dealers Mutual Insurance Company, a foreign corporation, subrogee of

Elizabeth Verkeyn, and 16 other plaintiffs against R. H. Hidey, Inc., a Michigan corporation, and United States Fidelity & Guaranty Company, a Maryland corporation, based on provisions of performance bond given in connection with public works contract, to recover for damage to abutting properties. Motion by defendant bonding company to dismiss action as to it granted. Plaintiffs appeal. Affirmed.

*Ward, Plunkett & Cooney* (*John D. Peacock,* of counsel), for plaintiffs.

*Walter A. Mansfield* and *David S. DeWitt,* for defendant United States Fidelity & Guaranty Company.

Edwards, J. (*dissenting*). At issue in the pages which follow is a long debated procedural reform. To replace multiple pleadings and multiple trials, the bar has long advocated liberal joinder rules where the causes of action possessed by a number of plaintiffs (as here) arose out of the same occurrence or occurrences and the defendant or defendants were the same. The Federal courts followed English precedent and pioneered with signal success in this field and with the overwhelming approval of the bar. This opinion suggests that Michigan follow the example set (which in nowise controls us) by reasonable interpretation of the statute on joinder obviously passed by the Michigan legislature with the view of accomplishing the same objective of "the convenient administration of justice."

The defendant the R. H. Hidey, Inc., was the successful bidder and entered into a contract with the city of Detroit for the construction of the Blue Hill pumping station for Detroit's storm-sewer system. One of the requirements for bidders on this job was

the filing of a performance bond, and the defendant United States Fidelity & Guaranty Company executed the bond in this instance as follows:

"PERFORMANCE BOND

"Know all men by these presents, that we R. H. Hidey, Inc., 260 Manchester ave., Detroit 3, Michigan, hereinafter called the principal, and United States Fidelity & Guaranty a corporation, organized and existing under the laws of the State of Maryland, and duly authorized to transact business in the State of Michigan, surety, hereinafter called 'surety,' are held and firmly bound unto the city of Detroit, a municipal corporation, through the dept. of public works as obligee, and hereinafter called 'obligee,' in the sum of $930,000 to be paid to the said obligee, to which payment well and truly to be made, we bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

"Sealed with our seals, and dated this 8th day of July, A. D. 1947.

"The condition of this obligation is such that, Whereas, the above principal has entered into a contract, Contract No PW169B, with said obligee, dated the 30 day of June, 1947, for construction of Blue Hill pumping station, which contract is herein referred to and made a part hereof as fully and to the same extent as if the same were entirely written herein, and

"Whereas, it was one of the conditions of the award of the said obligee, pursuant to which said contract was entered into, that these presents should be executed.

"And the said surety, for value received, hereby stipulates and agrees that no change, extension of time for the performance of the contract, alteration or addition to the terms of the contract or to the work to be performed thereunder or the specifications accompanying the same, or any other forbear-

ance on the part of either obligee or the principal shall in anywise affect its obligations on this bond, and it does hereby waive notice of any such change, extension of time for the performance of the contract, alteration or addition to the terms of the contract, or to the work or to the specifications or any other forbearance on the part of either the obligee or principal.

"Now, therefore, if the above principal shall in all respects comply with the terms and conditions of said contract, and his (their or its) obligations thereunder, including the specifications therein referred to and made a part thereof, and such alteration as may be made in such specifications, as herein and therein provided for, then this obligation is void, or otherwise to remain in full force, effect, and virtue.

> "R. H. Hidey, Inc.
>    (Principal)
> "By: /s/ R. H. Hidey, Pres.      (Seal)
>    (Title)
> "United States Fidelity & Guaranty
>    (Surety)
> "By James Fenwick,
>    Its Atty. in fact

(Title)

"Signed, sealed and delivered
   in the presence of:
   "/s/ B. H. Axtall
(Seal)"

As indicated above, by this bond United States Fidelity & Guaranty undertook to guarantee Hidey's performance under its contract and the bond itself adopted the provisions of the contract.

One of the provisions of the Hidey-City of Detroit contract guaranteed to the city of Detroit that the contractor would hold the city of Detroit harmless from any claims arising out of damages to abutting property owners to this work:

"The contractor shall continuously maintain adequate protection of all his work from damage and shall protect all city property and private abutting property from injury or loss arising in connection with this contract. He shall without delay make good any such damage, injury or loss, and shall defend and save the city harmless from all such damages or injuries occurring because of his work."

According to plaintiffs' pleadings, during the course of the execution of this contract various claims arose from abutting property owners alleging damage to their houses occasioned by caisson blasting operations. In all except 1 instance these claims were the subject of payments by insurance companies which paid the property owners' damage and became the property owners' subrogees in this suit. In 1 instance a property owner (Michael) is suing for his own uninsured damage.

In the instant suit plaintiffs seek jointly to sue the general contractor and the United States Fidelity & Guaranty Company on the claims listed above. The suit is filed in assumpsit, plaintiffs claiming that they are third-party beneficiaries under the contract clause quoted. United States Fidelity & Guaranty filed a motion to dismiss as to themselves only on 2 counts:

"1. That the causes of action asserted by the several plaintiffs herein are not joint, therefore, the causes of action and parties plaintiff are not properly joined in 1 action.

"2. That the declaration does not state a cause of action against defendant United States Fidelity & Guaranty Company by reason of the provisions of * * * (CL 1948, §§ 691.541–691.545 [Stat Ann 1953 Rev §§ 26.1231–26.1235])."

Thus said defendant claims misjoinder of the parties plaintiff; and, second, claims that no cause of action is stated by plaintiffs as to the United States

Fidelity & Guaranty Company under the third-party beneficiary statute.

On hearing of this motion before Wayne Circuit Judge George B. Murphy, United States Fidelity & Guaranty Company's motion to dismiss as to itself only was granted without any reasons being assigned by the trial judge, and plaintiffs have taken an appeal.

In this appeal where no trial has been had we, of course, assume as true all well-pleaded facts in plaintiffs' declaration. *Gilmer* v. *Miller,* 319 Mich 136; *Doyle* v. *Kammeraad,* 310 Mich 233; *American State Bank of Detroit* v. *Aaron,* 271 Mich 147 (100 ALR 1266).

We will discuss first the second of the issues listed. The performance bond as signed by United States Fidelity & Guaranty Company bound it to become a joint obligor in this venture with Hidey. The performance bond referred to and adopted the provisions of the Hidey-City of Detroit contract, 1 of the provisions of which was a guarantee that the contractor (and, hence, his joint obligor) would make good without delay any damage to abutting property owners. This then is a situation where a promise has been made by the bondsman to the obligee, city of Detroit, for the benefit of a named class, namely, the class of abutting property owners to this construction job.

Our first question is, May such property owners bring suit in their own names for enforcement of this contract?

Two Michigan statutes contain the answer to this question. First, CL 1948, § 612.2 (Stat Ann § 27.654), provides, in part:

"Every action shall be prosecuted in the name of the real party in interest."

It is obvious here that the obligee of the bond is not the real party in interest as to the promise referred to here and that the owners (or their subrogees) of the "private abutting property" are.

Second, the provisions of the third-party beneficiary statute come into play:

"Any person for whose benefit a promise is made by way of contract, as hereinafter defined, shall have the same right to enforce said promise that he would have had if the said promise had been made directly to him as the promisee." CL 1948, § 691.541 (Stat Ann 1953 Rev § 26.1231).

"A promise shall be construed to have been made for the benefit of a person whenever the promisor of said promise has undertaken to give or to do or to refrain from doing something directly to or for said person." CL 1948, § 691.542 (Stat Ann 1953 Rev § 26.1232).

The effect of such statutory provisions upon suits against bondsmen generally has been spelled out in 11 CJS, Bonds, § 106, pp 472, 473, as follows:

"In many jurisdictions, sometimes by virtue of statutes which prescribe that the real party in interest must be the plaintiff, the obligee need not sue if he is not entitled to the beneficial interest in the bond; but the party for whose benefit the bond is executed, whether the obligee or some other person, may or must sue thereon, but, in order to enable another than the obligee to sue on a bond, the right must be expressly or by unavoidable intendment given by statute.   *   *   *

"While it was held in early cases that where the bond is drawn to the obligee for the use and benefit of another, the latter cannot, in the absence of statute, sue thereon in his own name, but the suit should be in the name of the obligee, although he has no beneficial interest in the bond, the tendency of later cases in some jurisdictions has been to allow one,

for whose benefit a bond was made, to sue thereon. Thus, where a bond is payable to the State for the benefit of individuals, it has been held that anyone interested in performance of the conditions can sue on it, and that one suffering damage at the hands of one required to give bond by reason of the breach of the bond may bring action on the bond regardless of who is named obligee therein.   However, to enable a third party not named in a bond to sue thereon, it must clearly appear by the terms of the bond that he is of the class covered by the conditions of the bond and is entitled to its benefits; and if it appears from the terms used that the bond is solely for the benefit of the parties thereto, third persons cannot recover under its provisions."

See, also, 1 Callaghan's Michigan Pleading & Practice, § 15.34, p 348; *Lyons* v. *City of Grand Rapids,* 305 Mich 309.

At common law a mere contract beneficiary had no cause of action against the contract promisor; and prior to the passage of the provisions quoted above in PA 1937, No 296, much confusion had existed pertaining to such parties in Michigan courts. Grismore, Beneficiary Contracts in Michigan, 8 Detroit L Rev 1.

In one of the first cases interpreting this statute, Mr. Justice BUTZEL adopted the basic test suggested by Professor Grismore, *supra,* p 5:

"Under the third-party beneficiary act the legislature has prescribed an objective standard for determination of when a promisor has undertaken to give or to perform or refrain from performing a given act directly to or for a third person, a determination to be made from the form and meaning of the contract itself (PA 1937, No 296).

"As long as between the promisee and promisor it was intended the latter should assume a direct obligation to a third party, it is immaterial to the enforcement by such third person of the obligation

so incurred by promisor that the actual intent of the promisee was to protect himself from paying the debt to the third party." *Guardian Depositors Corporation* v. *Brown* (syllabi), 290 Mich 433, 434.

In a case involving a somewhat similar fact situation to the one at bar but a much less definite promise, this Court reversed a dismissal on motion. There a tenant was suing a building contractor claiming rights as a third-party beneficiary under a contract between his landlord and the contractor who had undertaken to remodel "in such a way as to cause a minimum of disturbance to the daytime operations in the building." This was held to be a promise directly to and for the benefit of the tenant so as to bring the terms of the third-party beneficiary statute into play. *Greenlees* v. *Owen Ames Kimball Co.*, 340 Mich 670 (46 ALR2d 1205).

In the instant situation we find little difficulty in holding that the terms of this contract make the owners of the "private abutting property" to this construction contract site direct beneficiaries within the meaning of CL 1948, §§ 691.541–691.545 (Stat Ann 1953 Rev §§ 26.1231–26.1235), and, hence, that said owners state a valid cause of action against the contractor and his joint obligor, defendant United States Fidelity & Guaranty Company.

The second question in this case is whether or not the parties plaintiff are misjoined so as to warrant dismissal of the cause of action on defendant's motion.

Joinder of parties plaintiff is governed by a statute in Michigan obviously designed to liberalize the rules formerly existing at common law.

The statute provides:

"The plaintiff may join in 1 action, at law or in equity, as many causes of action as he may have against the defendant, but legal and equitable causes of action shall not be joined; but when there is more

than 1 plaintiff, the causes of action joined must be joint, and if there be more than 1 defendant, the liability must be one asserted against all of the material defendants, or sufficient grounds must appear for uniting the causes of action in order to promote the convenient administration of justice, or when several suits shall be commenced against joint and several debtors, in the same court, the plaintiff may, in any stage of the proceedings, consolidate them into 1 action.  If it appear that any such causes of action cannot be conveniently disposed of together, the court may order separate trials, or whenever several suits shall be pending in the same court, by the same plaintiff against the same defendant, for causes of action which may be joined, the court in which the same shall be prosecuted may, in its discretion, order the several suits to be consolidated into 1 action."  CL 1948, § 608.1 (Stat Ann § 27.591).

Thus by reasonable construction it appears that plaintiffs may join their causes of action when (1) the causes are joint and the liability of the defendants is joint, or (2) when joinder would "promote the convenient administration of justice."

It is interesting to note that the statute provides for severance of the causes of action for separate trial if it appears to the court that "any such causes of action cannot be conveniently disposed of together."

Relevant also to our current problem are the provisions of Michigan Court Rule No 37, § 12 (1945), which provides:

"Where separate and distinct causes of action are joined in actions at law, the court may, at the request of counsel for either party, direct the jury to bring in separate verdicts upon the several counts, and may, under like circumstances, where a jury has been waived, find separately upon the several counts; and upon each of such verdicts or findings separate judgments shall be entered."

Finally, we should perhaps have before us CL 1948, § 612.13 (Stat Ann § 27.665), which seems generally to frown on defeat of causes of action for misjoinder:

"No action at law or in equity shall be defeated by the nonjoinder or misjoinder of parties. New parties may be added and parties misjoined may be dropped, by order of the court, at any stage of the cause, as the ends of justice may require."

It appears that the Michigan statute is potentially as liberal in allowing joinder in all respects, except the joining of legal and equitable causes, as the Federal Rules of Civil Procedure, 28 USCA, Rules 19, 20, 21.

These rules have been interpreted to allow joinder of suits by multiple plaintiffs in a variety of causes of action including tort and contract actions as well as equity. *Seely* v. *Cleveland Wrecking Co. of Cincinnati,* 15 FRD 469; *Gasswint* v. *Clapper,* 17 FRD 309; *Kainz* v. *Anheuser-Busch, Inc.* (CCA), 194 F2d 737, certiorari denied, 344 US 820 (73 S Ct 17, 97 L ed 638); *Ravetz* v. *Upjohn Company,* 138 F Supp 66; *Thomson* v. *United Glazing Co., Inc.,* 36 F Supp 527.

In the first of these cited cases, *Seely, supra,* Chief Judge Kirkpatrick explained the logic of the court as follows:

"The defendant points out that to allow the amendment would result in adding new parties having different causes of action. That is strictly true, but it is not a valid objection. The claims of the corporations arose from precisely the same transaction as that of the individual plaintiffs and most, if not all, of the questions of law and fact involved are common to all the claims. The joinder of the corporations in the original action would have been entirely proper, *Sporia* v. *Pennsylvania Greyhound Lines* (CCA), 143 F2d 105, and no reason is perceived

why they should not be added now.  Rule 1, Federal Rules of Civil Procedure, 28 USC, provides that the rules shall be construed to secure the 'just, speedy, and inexpensive determination of every action,' and the allowance of this amendment is, in the judgment of the court, the best way to obtain that result.  It is difficult to see how the defendant can be harmed. If it desires a severance in order to file a proper third-party complaint, it can have it, under the *Sporia Case*.  There is nothing to prevent its filing separate interrogatories directed to the respective plaintiffs.

"The amendment will be allowed."

We recognize, of course, that neither the Michigan statutes nor rule previously referred to deal as fully with the subject as do the Federal rules of civil practice upon which the quoted decision rests.  But it may be pointed out that the language primarily relied upon by the Chief Judge providing for a construction of the rules to secure "just, speedy, and inexpensive determination of every action" is no more broad than the words of our statute "or sufficient grounds must appear for uniting the causes of action in order to promote the convenient administration of justice" which we must construe here.

Applicable, too, to our current case are these other words: "The claims of the corporations arose from precisely the same transaction as that of the individual plaintiffs and most, if not all, of the questions of law and fact involved are common to all the claims."

Since the adoption of the Michigan joinder statute it has been interpreted many times, frequently in accord with the liberal construction generally given to effect the purposes of remedial legislation.

In at least 2 leading cases of fairly recent date joinder was allowed under the statute "in order to promote the convenient administration of justice."

*Goodrich* v. *Waller*, 314 Mich 456; *Gilmer* v. *Miller*, 319 Mich 136. The first of these was an equity action to set aside assignments of interests in an estate on grounds of fraudulent representation.

Mr. Justice STARR, for a unanimous Court, dismissed the misjoinder argument as follows (p 461):

"We cannot agree with defendant's contention, as each of the plaintiffs had similar interests in the Halstead estate; the representations to them were substantially identical; and they both sought the same relief. The causes of action could properly be joined under the above statute 'in order to promote the convenient administration of justice.' See *Latimer* v. *Piper*, 261 Mich 123; *Albaugh* v. *Abbott*, 253 Mich 588; *Hamilton* v. *American Hulled Bean Co.*, 143 Mich 277."

The *Gilmer Case* was a suit by 3 plaintiffs in assumpsit for money paid to defendant as their agent. The sums differed in amount but the claims all arose out of the same series of real-estate transactions.

Mr. Justice CARR, again speaking for a unanimous Court, gave the following as the Court's reasons for reversing a trial court order which had, in part, granted defendant's motion to dismiss for misjoinder (p 144):

"It does not appear that defendant will in any way be thereby prejudiced. In fact, it would seem to be to his advantage to have the issues involved tried in 1 proceeding rather than in 2 or 3 separate suits. As before noted it is the claim of plaintiffs that the defendant was the agent of each and all of them, and that he breached the duty owing to all. The action is one to recover moneys paid by the plaintiffs under the same contract. The receipt of all payments claimed by plaintiffs to have been made by them to defendant is admitted by the answer; and the factual issues actually in controversy are not complicated. The rights of the parties may and

should be determined in a single action.  The facts clearly indicate that the 'convenient administration of justice' will thereby be promoted.  See *County of Cass* v. *Shattuck,* 288 Mich 555."

Defendants and appellees rely heavily upon this Court's decision in *Bajorek* v. *Kurtz,* 335 Mich 58, claiming it to be controlling in the current situation.  The numerous plaintiffs in Bajorek were home owners in the vicinity of a concrete block manufacturing company yard, and each claimed damage to his house from the operation of heavy vehicles by the defendant.  The joint action was brought in tort.

The Court, speaking through Mr. Justice Carr, held (p 64):

"No claim is here made that the causes of action asserted by plaintiffs are joint.  Rather, it is argued that to permit such joinder would 'promote the convenient administration of justice.'  It will be noted that under the specific language of the statute, 'sufficient grounds' must appear in order to warrant the joinder of causes of action for the reason here urged.  We think it must be said that grounds of such character are not present in the case at bar.  We have a situation presented in which a number of persons assert that they have been injured severally in their property rights because of improper and unlawful acts on the part of defendants.  It cannot be said with certainty that the same issues will be presented in all of the 25 cases alleged in the declaration and covered by the bill of particulars.  Proofs may show damage in some cases but not in others, and defenses may exist against the rights of certain plaintiffs that are not available against other plaintiffs."

Thus Mr. Justice Carr based the finding of misjoinder on possible disparity of issues and of defenses as between individual plaintiffs.  This case has been the subject of criticism as representing a

refusal to continue a trend toward progressive liberalization of civil procedure in Anglo-American law. 51 Mich L Rev 1068.

While we feel that a complete or substantial disparity of issues of either law or fact and a complete or substantial disparity of defenses available against proposed joint plaintiffs would indeed affect the decision as to whether or not joinder promoted the convenient administration of justice, we do not feel compelled to review these questions and their effect upon proposed joint plaintiffs in tort actions at this time.

Our present case, as previously noted, is founded on contract. All plaintiffs claim the benefit of the same contract clause. As far as appears in this record, the same identical issues of both law and fact are involved in each individual claim. Likewise, as far as appears here, the defenses to the actions of each are the same or similar. Patently, also, the claim of each plaintiff arose out of the same circumstances. To require 17 or more separate lawsuits to be tried under these circumstances would uselessly overburden the courts, create enormous added expense for both plaintiffs and defendants and deny common sense.

It is true, of course, that the damages claimed by the individual plaintiffs here, while generally of a similar nature, represent varying amounts. Specific provision has been made for such a circumstance in Rule No 37, § 12, *supra,* by provision for entry of separate judgments. And in many decided cases this fact alone has been held no bar to joinder. *Latimer* v. *Piper,* 261 Mich 123; *Hamilton* v. *American Hulled Bean Co.,* 143 Mich 277; *Gilmer* v. *Miller, supra.*

We believe that the provisions of the joinder statute should be the subject of liberal interpretation to give effect to its remedial purposes. See Blume,

Free Joinder of Parties, Claims and Counterclaims, ABA Judicial Administration Monographs, Series A, June 1, 1942, p 41.  A rational test of "convenience" would be whether the causes of action of the plaintiffs arose out of the same transaction or occurrence and involve identical or similar issues of fact and law.  28 USCA, Rule 20(a), p 61; *Seely* v. *Cleveland Wrecking Co. of Cincinnati, supra;* 51 Mich L Rev 1068–1070.  Where plaintiffs assert that these tests of "convenience" are met under the statute and their claims appear unjustified to the trial judge, he has ample power to protect the defendants or the court itself by ordering separate trials.  Joinder statute, *supra.*

In the instant case plaintiffs' declaration appears to meet the test suggested and dismissal of their cause of action seems to us unjustified either under the joinder statute, *supra,* or under CL 1948, § 612.13 (Stat Ann § 27.665), which provides "No action at law or in equity shall be defeated by nonjoinder or misjoinder of parties."

For the reasons stated, the order of the trial court dismissing the cause of action as to defendant United States Fidelity & Guaranty Company should be vacated and the case should be remanded for further proceedings consistent with this opinion.

Costs to appellants.

CARR, J.  The declaration filed by plaintiffs in this case averred that in June, 1947, the city of Detroit entered into a contract with defendant R. H. Hidey, Inc., a Michigan corporation, for the construction of a pumping station at Mack and Bluehill avenues in said city.  The work was required to be done in a proper manner and subject to certain general conditions incorporated by reference. Among such conditions were the following:

"The contractor shall continuously maintain adequate protection of all his work from damage and shall protect all city property and private abutting property from injury or loss arising in connection with this contract. He shall without delay make good any such damage, injury or loss, and shall defend and save the city harmless from all such damages or injuries occurring because of his work. He shall furnish and maintain all passageways, barricades, guard fences, lights and danger signals, provide watchmen and other facilities for protection required by public authority, by local conditions, or by order of the engineer, all at no additional cost to the city. * * *

"The contractor shall take out and maintain during the life of this contract such public liability and property damage insurance as shall protect him from claims for damages for personal injury, including wrongful death, as well as from claims for property damages, which may arise from operations under this contract."

The contractor was also required to furnish surety company bonds to insure the construction and completion of the work in accordance with the contract documents, and for the protection of subcontractors, labor and materialmen, pursuant to the statute of the State. In accordance with the requirement a performance bond was executed by defendant R. H. Hidey, Inc., as principal, and the United States Fidelity & Guaranty Company, as surety, on July 8, 1947, requiring said principal to comply in all respects with the terms and conditions of its contract with the city.

The declaration further alleged that during the period from September 1, 1948, to and including the month of December of the same year the defendant contractor in the course of its operations under the contract caused damage to private property. With the exception of the individual plaintiff Edward

Michael, the owners of the property were protected from such damage by insurance policies severally issued by the plaintiffs herein. Plaintiff insurance companies further claimed that under the terms of their respective policies they expended a total of $5,970 for repairs, that each thereby became subrogated under its policy to the rights of the property owner insured thereby, and that plaintiff Michael was further damaged in the sum of $610 for repairs to his home. Plaintiffs asked in their pleading for a collective judgment in the sum of $6,580.

The defendant United States Fidelity & Guaranty Company entered a special appearance and moved to dismiss the declaration. In said motion it was asserted that plaintiffs' pleading failed to allege a cause of action against said defendant, and that the plaintiffs were not entitled to join their several causes, as alleged, in one action. The trial court granted the motion, and plaintiffs have appealed, contending that the entry of the order of dismissal was erroneous.

It is the position of the appellants that they were entitled to rely on the so-called third-party beneficiary act* on the ground that the performance bond executed by the defendants covered all the obligations assumed by the contractor in its agreement with the city of Detroit, and that the provision of said contract with reference to property damage claims, above quoted, was for the benefit of abutting property owners. In view of the specific obligations of the contract and the language of the bond with reference to the observance of the contractor's obligation we think it must be said that the situation presented here is fairly within the terms of the statute as construed in *Guardian Depositors Corp.* v.

* PA 1937, No 296 (CL 1948, § 691.541 *et seq.* [Stat Ann 1953 Rev § 26.1231 *et seq.*]).

*Brown,* 290 Mich 433; and *Greenlees* v. *Owen Ames Kimball Company,* 340 Mich 670 (46 ALR2d 1205).

It will be noted that the performance bond, in terms, is not restricted to cover possible failure on the part of the contractor to construct the pumping station in accordance with the plans and specifications, but extends to and includes all obligations assumed by said contractor under its agreement. The language used is sufficiently broad to cover the undertaking with reference to the assumption of liability resulting from property damage to certain third parties. The extent of the coverage into which appellee entered as surety does not affect the matter of enforceability. *Lawrence* v. *American Surety Co. of New York,* 263 Mich 586 (88 ALR 535). The bond must be construed in accordance with its provisions. Appellee's claim that plaintiffs could not rely on the third-party beneficiary act is not well founded.

This brings us to the question whether plaintiffs were entitled to join in one action for the recovery of the aggregate damages sustained by the individual plaintiff and by the subrogors of the plaintiff insurance companies. Necessarily involved is the interpretation of the provisions pertinent to joinder of causes of action found in CL 1948, § 608.1 (Stat Ann § 27.591). Said section reads as follows:

"The plaintiff may join in 1 action, at law or in equity, as many causes of action as he may have against the defendant, but legal and equitable causes of action shall not be joined; but when there is more than 1 plaintiff, the causes of action joined must be joint, and if there be more than 1 defendant, the liability must be one asserted against all of the material defendants, or sufficient grounds must appear for uniting the causes of action in order to promote the convenient administration of justice, or when several suits shall be commenced against joint and several debtors, in the same court, the plaintiff may,

in any stage of the proceedings, consolidate them into 1 action. If it appear that any such causes of action cannot be conveniently disposed of together, the court may order separate trials, or whenever several suits shall be pending in the same court, by the same plaintiff against the same defendant, for causes of action which may be joined, the court in which the same shall be prosecuted may, in its discretion, order the several suits to be consolidated into 1 action."

In view of the fact that the declaration was dismissed on motion we must accept as correct well-pleaded averments of fact therein. It does not appear, however, that the causes of action that plaintiffs have sought to join are actually joint within the meaning of the statute above quoted. Insofar as appellee is concerned the right to sue rests on the provisions of the performance bond. That undertaking, read in conjunction with the conditions of the contract, may not be regarded as the assumption of liability to respond, *in a single action,* for the aggregate of the damages claimed to have been suffered by abutting property owners. Assuming that each such property owner was entitled to bring action for damages the conclusion does not follow that all might join. In other words, the rights of action of said property holders were not joint. None was interested in the rights of the others, nor in possible recoveries thereby. Each had a single cause of action that, assuming his property to have been wrongfully damaged by the acts of the contractor, he was entitled to maintain.

The plaintiff insurance companies are in no better position than their subrogors. Each policyholder, under the terms of his insurance contract, was in the position of merely assigning the cause of action that he had. Certainly he could not assign the rights of action of other property owners, nor was there

any attempt to do so. Had separate suits been started by plaintiffs or by their subrogors, it is conceivable that they might by agreement of the parties approved by the court, or by court order if the facts so justified, have been tried together, thus expediting the work of the court. However, the fact that such procedure might have been observed does not affect the question as to the right to join such causes of action in 1 case.

In the final analysis each plaintiff is seeking merely to recover his own damages. Whether other plaintiffs recover is not its or his concern. We are not dealing with a situation in which a number of individuals are seeking precisely the same relief, as in a suit to enjoin the continuance of a nuisance or other like instances. In *Latimer* v. *Piper,* 261 Mich 123, plaintiffs joined in a suit in equity for rescission of an agreement by parties found to have engaged in a joint venture. In *Gardella* v. *Babigian,* 263 Mich 514, a joint venture was also involved. These and other decisions of like nature fairly suggest the situation obtaining where joinder has been permitted. The facts in the instant proceeding, as pleaded in the declaration, are not within the purview of such holdings.

Whether a particular situation involving the right of joinder of parties plaintiff arises in contract or in tort may not properly be regarded as of controlling importance. Each such case must be determined with reference to its own facts and circumstances. *Torrent* v. *Hamilton,* 95 Mich 159. In the instant case the construction of the agreement by virtue of which plaintiffs claimed the right to sue the appellee surety company must be given consideration. A conclusion that either of the signers of the performance bond became an insurer for the payment of claims by property owners is not justified. The liability assumed in the bond was not of similar char-

·acter· to that to which plaintiff insurance companies bound themselves by virtue of the policies that they issued to their respective subrogors. The provision of the contract with the city of Detroit with reference to the payment of damages for injuries to abutting property should be read in conjunction with the subsequent clause, above quoted, with reference to the maintenance of public liability and property damage insurance. It is a fair conclusion that what the parties had in mind was to impose liability on the contractor, to the exclusion of the city, in the event that abutting property was damaged by the wrongful acts of the contractor or its agents in carrying on the construction project.

Without reference to the form of action, the claim of each plaintiff sounds in tort and the right of recovery rests on a showing of wrongful conduct resulting in damage. Appellee's consent to be sued does not alter the situation in this respect. Its obligation was to pay damages for injuries to abutting property when the owner or occupant thereof established his right to such damages. Whether all the properties involved in the instant proceeding abutted the site of the contractor's operations does not affirmatively appear from the averments of the declaration. Conceivably such requisite fact might be involved in trials of some of the cases sought to be joined.

It is obvious that the causes of action sought to be joined in the instant proceeding are not joint within the meaning of the statute. Appellants claim, however, that joinder should be permitted on the ground that such action will "promote the convenient administration of justice." It will be noted that such action may not be taken unless "sufficient grounds" appear for uniting causes of action. This language necessarily implies that the reasons for permitting joinder must concern the particular causes involved.

It must be capable of being said that the doing of justice as between the parties will be in some way favorably affected if the action in question is permitted. A situation of this nature was involved in *Gilmer* v. *Miller,* 319 Mich 136, where the action was instituted by 3 persons against the defendant to recover money paid to him as the agent of the plaintiffs. Breach of duty owed to the alleged principals was claimed, and defendant admitted the receipt of the payments sought to be recovered. The situation was such as to clearly indicate that the proper administration of justice required a joinder, particularly in view of the fact that, if joinder were not permitted, one of the plaintiffs would be required to her detriment to split her cause of action. Likewise in *Goodrich* v. *Waller,* 314 Mich 456, plaintiffs having like interests in a certain estate were permitted to join in a suit to set aside assignments affecting plaintiffs and said estate.

In the proceeding at bar it does not appear that any one of these plaintiffs would have been prejudiced had it, or he, brought a separate suit for the recovery of damages claimed. Obviously the right to such recovery would not have rested on the condition of others obtaining judgments in their favor. The declaration sets forth no reason why joinder should be permitted. In other words, so far as the pleading is concerned, "sufficient grounds" are not made to appear. The reasons stated in *Bajorek* v. *Kurtz,* 335 Mich 58, are equally applicable under the facts in the instant case.

As before noted, the promotion of justice has reference to the cases concerned in a particular instance. The language of the statute may not be construed as contemplating merely the expediting of the work of the court. Had the legislature had such thought in mind, we may assume that it would have been clearly expressed. The practice with ref-

erence to trying cases together when they arise out
of the same facts has come about in the general in-
terests of parties litigant, and the expedition of
trials. The right of plaintiffs to join their several
causes in one action is subject to wholly different
considerations.

We are concerned here with causes of action re-
sulting, as it is claimed, from the invasion of prop-
erty rights of a number of parties. It may not be
said that the same questions will arise in each case.
The averments of the declaration indicate that the
conduct of the contractor claimed to have been
wrongful in character extended over a period of 4
months. We may not assume that all of the abutting
properties involved were injured simultaneously by
defendant's improper methods of operating. In
some instances the question may arise whether the
property claimed to have been damaged was actually
abutting property within the meaning of the con-
tractual obligations involved. Under the situation
presented the statute does not permit joining the
causes of action claimed to have arisen because of
the contractor's wrongful operations in the perform-
ance of its contract. Whether such joinder might be
allowable under the Federal rule is not material to
our inquiry here. The practice in the courts of this
State is governed by the statute.

If joinder of the several causes of action claimed
by plaintiffs is regarded as permissible, the conclu-
sion necessarily follows that in many other instances
persons having separate and distinct causes of ac-
tion may likewise join. By way of illustration, if, as
frequently happens, a number of individuals are in-
jured, in person or property, as a result of the negli-
gent operation of a motor vehicle or other wrongful
conduct asserted against a defendant, all may join in
one action to recover the aggregate of their damages.
The statutory provisions governing such a situation

have not been so interpreted. Such cases may under proper circumstances be tried together, but such procedure is wholly distinct from the matter of joinder of causes of action. The position that this Court has taken, in construing the statute, clearly appears from numerous decisions, among which may be cited: *Halkes* v. *Douglas & Lomason Co.,* 267 Mich 600; *Jones* v. *City of Detroit,* 277 Mich 272; *Gumienny* v. *Hess,* 285 Mich 411; *Bostrom* v. *Jennings,* 326 Mich 146.

The order of the trial court from which plaintiffs have appealed is affirmed. The causes of action asserted are not joint, and it does not appear from the record before us that sufficient grounds exist to permit the allowance of joinder in one action. Appellee may have costs.

DETHMERS, C. J., and SHARPE and KELLY, JJ., concurred with CARR, J.

BLACK, J. (*concurring in affirmance*). The cause of action each corporate plaintiff possesses against Hidey arose from a succession of torts committed by Hidey, and it has passed to such plaintiff by assignment. The cause of action individual plaintiff Michael possesses against Hidey arose in his favor and is of the same order. The question is whether 17 parties, separately possessed of such causes against a common wrongdoer—causes not joint within meaning of CL 1948, § 608.1 (Stat Ann § 27.591),— may unite in suit by single declaration and thus, by the mere act and fact of agreed confederation and without consent of court, compel the wrongdoer (and the latter's surety) to answer all such causes in a trial of issues presented by 1 set of pleadings.

Since the plaintiff parties have not sought relief in equity, there is no occasion for resort to authorities dealing with equity's distinctive and flexible

jurisdiction over multivarious rights of action. By the same token, Federal rules of practice are quite irrelevant, since they have largly abolished distinctions between proceedings at law and equity and actually authorize what our rules, statutory and court made, do not. See Rule 20(a) (1938), Federal Rules of Civil Procedure, 28 USCA, p 61.* The controlling authority here is *Bajorek* v. *Kurtz*, 335 Mich 58, and I suggest that we either follow or overrule its gleanable holding "that the plaintiffs were not entitled to combine in 1 action their individual claims against the defendants" (p 65 of report).

I agree with Mr. Justice CARR that the causes these plaintiffs seek to join are not joint within meaning of said section 608.1; that each plaintiff so far as the face of this declaration discloses is possessed of a single cause separately maintainable by him; that the claim of each plaintiff—referring again to the face of the declaration—sounds in tort; that the respective causes are quite akin to such as would have accrued had Hidey's blasting operations actionably injured 17 persons, and that the occasion for determining whether such causes or any group or groups thereof should be tried together will not arise unless and until they or certain of them have been separately commenced and brought to issue.

It is said that affirmance of this order of dismissal would require separate trials of 17 or more separate lawsuits, thus overburdening the courts and creating unnecessary expense. I disagree and respect-

---

* A comparison of *Bajorek* with Federal rules appears, as my Brother notes, in 51 Mich L Rev 1068. *Bajorek's* reviewer, critical of *Bajorek*, correctly concludes that "By holding that individual property owners could not join in 1 action at law for damages from the same wrongful conduct of the defendants, the court has, in effect, said that each plaintiff in such a situation must institute a separate action against the same defendants." He concludes that *Bajorek's* holding will require "several separate trials in which different juries will be presented with evidence of the same wrongful conduct of the same defendants, and of similar types of injuries to real property." This is quite erroneous, as will presently appear.

fully suggest that *Bajorek's* requirement, of separate suits brought by separate declarations, in no manner infringes authority of the trial court to consider need and provide group trials of suits that have come to issue. Too, *Bajorek* shows that the administration of justice would be served better by letting the trial court rather than agreeable plaintiffs decide whether selected suits at law should or should not be declared and tried together.

For example: Let us picture the instance of an intoxicated motorist, driving at excessive speed and losing control with result that he runs down 17 pedestrians both in the street and on the sidewalk. Some are minors, some are grievously injured yet survive, some are killed and are survived by numerous and uncertainly identifiable dependents, some linger and die later with and without dependency, and some are subject to the issue of contributory negligence. Assuming the lawyer or lawyers in charge of such causes partake of sufficient ingenuity to declare all in 1 instrument, and his or their clients agree that such be done, is the court (with whose clerk the "declaration" is filed) obliged on account of such agreement to convene a jury and proceed to trial of issues made by the filed instrument? I think not, in the name of common sense and proper interpretation of the statute. And it will not do to say that the court in such instance might and probably would order separate or group trials. The court could not do so for want of a declaration and answer in each case unless, of course, the judge chose to undertake separation of the causes by use of scissors and pastepot. Even then, he would be hard put. It would not be easy, I swear, to make 17 declarations out of 1 on file.

This case should not pass into our reports without reference to and treatment of certain confusing language appearing in *Higdon* v. *Kelley,* 339 Mich.

209.* The statute (said section 608.1) does *not* provide "that causes of action may be joined by plaintiffs where that result would promote the convenient administration of justice," and we should say so considering the erroneous dicta shown on pages 220 and 221 of *Higdon's* report. The statute does not prevent what was done in *Higdon,* that is, consolidation for trial of separately pending suits at law when such consolidation will, in judicial view, promote the administration of justice. This means that it is for the court to say whether such consolidation for trial shall take place, and that parties plaintiff by agreeing to declare together—upon nonjoint causes—cannot usurp the judicial function.†

The ultimate and altogether final conclusion made by the declaration in this case is that each plaintiff is exclusively possessed of a right *ex delicto* against Hidey and that the contractual instruments attached to such declaration (between the defendants and the city of Detroit) grant no right of pleaded joinder thereof, at law, with like causes possessed by the others. It follows that such declaration should be dismissed as to the defendant party moving for such dismissal, there being no request for dropping of 16 parties plaintiff.

For stated reasons I vote to affirm the circuit court's order dismissing as to Hidey's surety (defendant United States Fidelity & Guaranty Company). Whether the suit remains alive as to defendant Hidey is not before us.

Smith, J., concurred with Black, J.

Voelker, J., took no part in the decision of this case.

---

* Strangely enough this case of *Higdon* is neither cited nor considered in the briefs. It holds—quite properly—that the trial court was lawfully empowered to consolidate for trial 6 separately pending damage suits (arising out of the same facts pertaining to liability).

† See, in support, 9 Detroit L Rev 74.