NORTHWESTERN MUTUAL INSUR-
ANCE COMPANY, Plain-
tiff-Appellant,

v.

JACKSON VIBRATORS, INC., Harris E.
Cregg, Frances E. Cregg, and Robert
Rabe, Defendants-Appellees.

No. 17397.

United States Court of Appeals
Sixth Circuit.

Oct. 21, 1968.

---

Laurence D. Smith, Grand Rapids, Mich., (Laurence D. Smith, of Schmidt, Smith, Howlett & Halliday, Grand Rapids, Mich., on the brief), for appellant.

Charles Lundstrom, Grand Rapids, Mich., (Charles C. Lundstrom, of Warner, Norcross & Judd, Grand Rapids, Mich., on the brief), for appellee, Jackson Vibrators, Inc.

Eugene Christman, Ludington, Mich., for appellee Harris E. and Frances E. Cregg.

Before O'SULLIVAN, CELEBREZZE, and McCREE, Circuit Judges.

McCREE, Circuit Judge.

Northwestern Mutual Insurance Company, a Washington corporation, hereinafter Northwestern, appeals from a judgment that Jackson Vibrators, Inc., a Michigan corporation, hereinafter Jackson, recover of Northwestern the sum of $31,300 plus interest and that Jackson upon receipt of same apply it in accordance with certain land contract agreements between Jackson and defendants and appellees, Robert Rabe and Creggs for the benefit of the Creggs.

On November 26, 1957, Jackson was the sole owner in fee of farm premises upon which certain buildings stood in Western Michigan, and through an insurance agency obtained a Michigan Standard Fire Insurance Policy issued by Northwestern insuring the premises for $76,985 for a period of three years. Jackson paid the premium of $2,179.85 in full at the time of issuance. The policy provided by its terms, *inter alia*,

"This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company."

On November 13, 1958, Jackson entered into a land contract for the sale of the premises with Robert Rabe as vendee, and the contract provided,

"Said Second Party (Rabe) shall keep all buildings now on or that may hereafter be placed on said premises insured in the name of and in a manner and amount and by insurers approved by First Party, and shall leave the policy with First Party, and in case of loss the insurance proceeds shall be used for rebuilding, repairing and replacing the leased premises, unless, by mutual agreement, paid to First Party and endorsed on this contract to the extent of the amount unpaid thereon and the balance, if any, shall belong and be paid to the Second Party," and

"Should Second Party fail to * * * keep said buildings insured, First Party may pay the same and have the buildings insured and the amounts thus expended shall be a lien on said premises, be added to the amount then unpaid thereon, be due at once and bear interest until paid at seven percent (7%) per annum."

On December 5, 1958, there was attached to the policy previously issued by Northwestern an endorsement which provided,

"Attached to and forming a part of Policy Number 4207–6598 issued to JACKSON—named insured changed to read JACKSON VIBRATORS, INC. AND ROBERT RABE AS THEIR INTERESTS MAY APPEAR."

Then, on April 9, 1960, Rabe assigned all his interest in the land contract to the Creggs who paid him all that he had paid under the contract as well as the pro rata share of the insurance premium which Rabe had paid to Jackson. No notice was given to Northwestern of this assignment nor was a request made by anyone to have Northwestern endorse the policy of insurance as had been done at the time of the sale on land contract to Rabe.

Nevertheless, Jackson and Rabe orally agreed with the Creggs that the Northwestern policy would continue for the benefit of the Creggs, and that the Creggs would pay the pro rata share of the insurance premium. No notice of this oral agreement was given to Northwestern.

Although Jackson was to bill the Creggs for a portion of the premium representing the period from the time of the Rabe-Cregg assignment until the expiration date of the policy, it did not do so and the Creggs paid nothing on this obligation.

On September 26, 1960, the barn, the wood frame silo, tile silo, and wood frame crib number 3, listed buildings on the Schedule of Items in the policy, sustained extensive loss and damage by fire. On the Schedule of Items, the value of the barn was listed as $30,000, the frame silo at $700, the tile silo at $500 and the frame crib at $100.

The District Judge found the replacement value of all the property in excess of $70,000 and that the actual cash value of the several items at the time of the fire exceeded the values accorded them in the Schedule of Items.

At the date of the fire, the unpaid balance on the land contract was $27,005.97 although it was subsequently increased to $45,395.95 as a consequence of two loans from Jackson to the Creggs, which amounts were added to the land contract balance.

Northwestern brought an action for a declaratory judgment that it was not liable to

(a) Rabe, because he had no interest in the premises at the time of the fire.

(b) The Creggs, because they were not named insureds.

(c) Jackson because its security interest was not impaired as a result of the fire.

It sought a further finding that if it had any liability to Jackson, such liability was limited to the amount of impairment, if any, of Jackson's security interest, and that upon paying such amount it should be subrogated pursuant to MSA 24.12836(4), Comp.Laws 1948, § 500.2836,[1] to the extent of such payment to Jackson's rights under the contract with the Creggs.

The District Court entered judgment for Jackson and directed application of the policy proceeds in accordance with the provision of the land contract between Jackson and Rabe dated November 13, 1958 for the benefit of Rabe and the Creggs. Northwestern was denied any rights of subrogation.

Appellant first contends that the District Court erroneously held that the insurer was liable to plaintiff's subsequent assignee, the Creggs, of whose interest the insurer had no knowledge until after the loss.

This simply is not so. The judgment does not award the proceeds of the policy to the Creggs who were not parties thereto. Instead, it properly awarded the proceeds to Jackson, the named insured, but required Jackson to apply them to restore the property as the land contract provided.[2] According-

1. (4) Subrogation. Whenever an insurer shall be entitled, by the terms of the Michigan standard policy, to subrogation against a third party, this shall be deemed to include contractual as well as tort rights of action, to the extent only of the loss. An action may be maintained by either the insured or insurer, or by both of them jointly, to recover their respective portions of such loss. P.A.1956, No. 218 § 2836, Eff. Jan. 1, 1957.

2. That portion of the judgment provided, "IT IS FURTHER ORDERED AND ADJUDGED that defendant Jackson Vibrators, Inc. shall, upon satisfaction of this judgment by the plaintiff, apply the entire proceeds of the judgment exclusive of taxed costs, in accordance with the provisions of the land contract between Jackson Vibrators, Inc. and Robert Rabe dated November 13, 1958, such application to be for the benefit of defendant Robert Rabe and defendants Harris E. Cregg and Frances E. Cregg."

ly, appellant's reliance on McHugh v. Manhattan Fire & Marine Ins. Co., 363 Mich. 324, 109 N.W.2d 842 (1961), is misplaced.

Appellant's second contention is that after payment of the amount of the fire loss it was entitled to be subrogated to Jackson's right to receive the balance due under the land contract to the extent of the payment and that the District Court erroneously denied it this right.[3]

Appellant relies on McCoy v. Continental Insurance Co., 326 Mich. 261, 40 N.W.2d 146 (1949), in which a vendor of real property obtained a fire insurance policy which contained a subrogation clause. After a fire, the vendor's insurer paid the vendor the balance due on the land contract and became subrogated to the vendor's rights thereunder against the purchaser who had paid no part of the premium and did not know of the policy. The District Court here was correct in not following *McCoy* because, as the Michigan Supreme Court observed in that opinion, the vendor intended to insure only his interest which, although evidenced by legal title, was merely a security interest for the unpaid contract balance. The Michigan Court so concluded because not only was there a subrogation clause in the policy but also there was no arrangement between vendor and vendee in *McCoy* concerning its proceeds nor any allegation that the vendee had paid or was liable for the premium. Cf. Pendleton v. Elliott, 67 Mich. 496, 35 N.W. 97 (1887).

■■ A subrogee acquires no greater rights than those possessed by his subrogor and the subrogated insurer is merely substituted for his insured. Couch on Insurance 2d, § 61.36; Indemnity Ins. Co. of North America v. Otis Elevator Co., 315 Mich. 393, 24 N.W.2d 104, 171 A.L.R. 266 (1946). This is

true whether subrogation is equitable or conventional as in the instant case pursuant to a clause in the insurance contract. General Acc. F. & L. Assur. Corp., Ltd. v. Finegan & Burgess, Inc., 351 F.2d 168 (6th Cir.1965), Hardware Dealers Mutual Insurance Co. v. R. H. Hidey, Inc., 349 Mich. 490, 84 N.W.2d 795 (1957).

■ Jackson, to whose vendor's interest Northwestern seeks to be subrogated, is obliged under its agreement with the Creggs not only to convey a marketable title upon payment of the contract balance but also to maintain the policy of fire insurance issued by Northwestern, and, in the event of loss, to apply the proceeds of that policy to restore the damaged premises. Therefore, as a consequence of being subrogated to Jackson's interest by paying Jackson the balance due on the contract, Northwestern would also be obligated to expend the amount of the fire loss to restore the premises (unless by agreement with the Creggs an equal amount would be employed to reduce the land contract balance). Thereafter, Northwestern could recoup the amount it paid Jackson by receiving from the Creggs the monthly installments over the life of the contract. We do not understand Northwestern to request this relief.

■ Since a result of subrogation would have been to give the Creggs the benefit of the proceeds, the District Court's decision denying subrogation and awarding the proceeds to Jackson for the benefit of the Creggs achieved the correct result and avoided circuity of action. See Maryland Casualty Co. v. Employers Mutual Liability Ins. Co., 208 F.2d 731 (2d Cir.1953).

The District Court did not rule on appellant's final contention that if the Jackson-Creggs agreement for the application of the policy proceeds prevented

---

**3.** The District Court's judgment provided, "IT IS FURTHER ORDERED AND ADJUDGED that plaintiff Northwestern Mutual Insurance Company has no rights of subrogation against defendants Harris E. Cregg and Frances E. Cregg under the land contract dated November 13, 1958, and the assignment thereof dated April 9, 1960."

subrogation, Northwestern should be excused from performance under the insurance policy. The District Court made an unchallenged finding absolving the Creggs from any responsibility for the fire and the agreement cannot be regarded as the release of a wrongdoer or other party responsible for the loss. Cf. Union Ins. Soc. of Canton v. Consolidated Ice Co., 261 Mich. 35, 245 N.W. 563 (1932).

Affirmed.